380 A.2d 789

COMMONWEALTH of Pennsylvania

v.

**Sidney KNIGHTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided Dec. 2, 1977.

Gary Neil Asteak, Assistant Public Defender, Easton, for appellant.

Alan B. McCall, Assistant District Attorney, and John E. Gallagher, District Attorney, Easton, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Northampton County after con-

viction of the defendant-appellant, Sidney Knighton, in a jury trial of crimes of burglary, theft of movable property, and from the denial of post-trial motion. He was sentenced to two and one-half to five (2½ to 5) years imprisonment.

■ The appellant contends that he was denied his right to allocution at sentencing. The record belies this claim as it establishes that he and his counsel were afforded the opportunity to address the court prior to the imposition of sentence. He also complains because the court sought the aid of the full bench in fixing sentence as the trial judge had the inclination to sentence him to the maximum term. This benefited the appellant. His consultation with the full bench is not grounds to set aside the sentence. The sentence is within the discretion of the court. *Commonwealth v. Reese,* 230 Pa.Super. 471, 327 A.2d 189 (1974).

■ A store was broken into on the night of June 30, 1975, and clothing of the value of $4940.76 was stolen. Statements made by the appellant in the presence of two Commonwealth witnesses who resided with the appellant of his intention to burglarize the store before the commission of the crime and statements of the same witness indicating his part in the burglary when he returned in possession of items stolen were submitted into evidence under objection. These statements qualify as admissions and are exceptions to the hearsay rules. *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972).

■ The court below properly denied the appellant's demurrer and request for binding instructions. The evidence was sufficient under the law to support the verdict. Items found in the appellant's apartment were identified by the store manager as being part of the loot of the burglary. This was the same material that the two witnesses testified were in the appellant's possession when he returned to his residence and which he stated that he had secured from the burglary.

The court's charge as to voluntary intoxication was sufficient. *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661

(1975). Appellant's point for charge, which was refused, was redundant.

■ During voir dire, one prospective juror in answer to a question, remarked that everyone was a victim of crime. The court immediately dismissed the juror. The motion for a mistrial was properly refused. Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

SPAETH, Judge, dissenting:

After a jury had found appellant guilty of burglary[1] and theft of movable property,[2] the lower court sitting en banc denied appellant's motions in arrest of judgment and for new trial, and on June 10, 1976, the trial judge sentenced appellant to two and a half to five years in prison. Appellant has repeated to us the arguments he made to the lower court in support of his motions in arrest of judgment and for new trial. I shall not discuss these arguments, however, for they present no novel point of law, and the lower court has ably disposed of them in the opinion it filed in support of its order denying appellant's motions. Appellant has in addition argued to us that his sentence was illegal; this argument requires discussion.

Rather than summarize, it will be better to quote the entire transcript of the sentencing hearing. It is as follows:

THE COURT: Mr. Knighton, we have gone through all of this. Your counsel has read the presentence investigation that was made.

I will hear from counsel if he has anything to say, but I want to preface this with this remark: The grief that you have caused my family can never be measured.

THE DEFENDANT: What was that?

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, § 3502; 18 Pa.C.S. § 3502.

2. *Id.,* § 3921; 18 Pa.C.S. § 3921.

THE COURT: You don't even remember what it was. The threats that you made over the telephone, the change in our lifestyle since those calls; no way of ever going back to the way we did live in that household and I felt so strongly about that, Mr. Knighton, that I did not take it upon myself to figure out the sentence in this case because I felt too strongly.

I will hear what your counsel has to say.

MR. ASTEAK [Assistant Public Defender]: Your Honor, I discussed with Mr. Knighton your sentencing him on these charges in light of the occurrences which you just spoke of. Mr. Knighton informed me that he felt that as you, I believe expressed, could not set your personal feelings aside, your family's feelings aside, and on the basis of the record and on the basis of the presentence report, honestly and fairly sentence him on these charges. I discussed with him the possibility of requesting another judge to sentence, as well as other remedies that were possible in light of these—

THE COURT: I think this kind of scum does not belong anywhere in this society. Under the guise of a telephone you will make people's lives miserable, as miserable as you made those in our family, but what I have done is this: I have not entered into this sentence. I have asked my colleagues at our sentencing council to come up with a sentence and I will be guided by it, but were I doing it otherwise, because of my prejudice in this thing, I might sentence more—seriously, I think I would give you the maximum, whatever it was. Invading a citizen's household with that kind of talk—

THE DEFENDANT: May I say something?

THE COURT: No. I do not want to hear what you have to say. I will hear from counsel.

MR. ASTEAK: Your Honor, I have nothing further. To the best of my knowledge, the information, as contained in the presentence report, is accurate concerning Mr. Knighton's background and social history. I think you should take into consideration the family problems, the educational prob-

lems that he has had throughout his life, the institutionalization that he has been subjected to.

I would request Mr. Knighton express whatever thoughts he might have at this moment.

THE COURT: Because your counsel has asked for it, I will listen to what you have to say.

THE DEFENDANT: I didn't call you. It's just—

THE COURT: If you are going to start out by saying you did not call, then I do not want to hear another blessed word because I know you called. I heard your voice and I recognized your voice.

THE DEFENDANT: You said before, when you came to court, you didn't recognize my voice.

THE COURT: I knew who it was and I know it was you and I don't want you denying it. Now, that is not what I want to hear because you are not being sentenced on that here.

THE DEFENDANT: I know.

THE COURT: You are being sentenced on another charge.

THE DEFENDANT: But you brought it up and Donald Bryant—he came to me and told me that—he came upon the stand. He lied on me, you know.

THE COURT: Donald Bryant did not lie.

THE DEFENDANT: He wants to come back to court and say that he did 'cause I didn't call you.

THE COURT: I do not want to try that case here. I know it was you and the jury has said it was.

THE DEFENDANT: They don't know.

THE COURT: You can't hide behind that kind of a sham. Well, anyhow, I have been completely guided by the sentencing council and I did not enter into it and I am following what they have come up with and not what I would have come up with.

The sentence of the Court is that you, Sidney Knighton, pay the costs of prosecution, undergo imprisonment at Dallas for not less than two and a half years nor more than five years, and that you be taken to Dallas for assignment to some correctional institution and the sheriff is directed to transport you there and to remain and stand committed until this sentence is complied with.

MR. MC FALL [Assistant District Attorney]: He should be advised of his right to appeal.

THE COURT: You will advise him.

MR. MC FALL: There is an application for restitution in this case.

THE COURT: I know he did not get these articles. I know he did not get these articles and I am not making him pay because any of this money he may have gotten—it is a little bit but so little of it that I am not going to make him make any restitution. As far as I am concerned, serving two and a half to five years is what the sentence is and, hopefully, I will never run across your path again, sir; just hopefully I will not.

It is my duty to inform you, Mr. Knighton, and I do inform you that you have an absolute right of appeal to the Superior Court of Pennsylvania from this judgment of sentence. If such an appeal is taken, it must be taken within thirty days from this date or it will be waived. Since you are without funds, the public defender is directed to represent you in this matter.

Sheriff, take this defendant away.

(The sentencing is terminated.)

N.T. Sentencing Hearing 2–6.

Before considering the conclusions to be drawn from the transcript of the sentencing hearing, a preliminary comment is in order. We do not have the record of the case in which appellant was charged with having made threatening telephone calls to the sentencing judge. It is sufficiently clear from what we do have, however, that that case has been

tried, and that a jury found appellant guilty.[3] Accordingly, appellant's protestations to the sentencing judge that he did not make the telephone calls, and his argument with the judge about whether the judge had or had not recognized appellant's voice as the voice of the caller, are entitled to no weight. In this regard it may be added that counsel for appellant has not suggested that appellant was not the caller; counsel has evidently assumed—correctly—that in deciding this case we assume that appellant was the caller.

This having been said, one must draw the following conclusions from the transcript of the sentencing hearing:

*First:* Appellant's calls to the sentencing judge gravely disrupted the life of the judge and the judge's family. Thus the judge referred to "the change in our lifestyle since those calls; no way of ever going back to the way we did live in that household. . . ." Also: "you will make people's lives miserable, as miserable as you made those in our family."

*Second:* In consequence of appellant's disruption of the life of the sentencing judge and the judge's family, the judge was unable to regard appellant with any objectivity. This is manifested at several points in the transcript but most clearly in the judge's interruption of appellant's counsel to say: "I think this kind of scum does not belong anywhere in this society."

*Third:* The sentencing judge recognized that he was unable to regard appellant with any objectivity and therefore completely withdrew himself from the determination of what appellant's sentence should be. Thus the judge said: "I felt so strongly about that [the disruption in consequence of the telephone calls], Mr. Knighton, that I did not take it upon myself to figure out the sentence in this case because I felt too strongly." Also: "I have not entered into this sentence. I have asked my colleagues at our sentencing council to come up with a sentence and I will be guided by

**3.** *See in particular* the sentencing judge's statement:
I do not want to try that case here. I know it was you and the jury has said it was.

it, but were I doing it otherwise, because of my prejudice in this thing, I might sentence more—seriously. I think I would give you the maximum, whatever it was." Finally: "Well, anyhow, I have been completely guided by the sentencing council and I did not enter into it and I am following what they have come up with and not what I would come up with."

From these three conclusions it follows that appellant's sentence must be vacated as illegally imposed, and the record remanded so that another judge may impose sentence.

Resisting this disposition, the Commonwealth has argued as follows:

Appellant claims that he was denied the right to allocution at sentencing. Even a cursory review of the notes of testimony taken during the sentencing proceeding clearly establishes that both appellant and his counsel were afforded opportunities to address the court prior to the imposition of sentence. A fair reading of the sentencing proceeding establishes that the sentencing judge sought impart [*sic*; "input" no doubt intended] from his colleagues on the bench and, as a result, modified, to the benefit of Appellant, his own inclinations to impose a more severe sentence. As a result, the Appellant received every possible consideration from the trial court.

Commonwealth's Brief at 9.

This argument will not withstand examination.

Appellant's counsel is quite correct in claiming that appellant was denied the right of allocution. It is true that after saying to appellant, "No, I do not want to hear what you have to say," the sentencing judge said, "Because your counsel has asked for it, I will listen to what you have to say." These statements, however, do not, and cannot, show that appellant was afforded his right of allocution. The essence of the right of allocution is the opportunity to make a statement on one's own behalf *before the sentence is decided upon.* Thus, Rule 1405(a) of the Pennsylvania Rules

of Criminal Procedure provides that the sentencing judge shall

> (a) afford the defendant the opportunity to make a statement in his own behalf and afford counsel for both parties an opportunity to present argument and information *relative to sentencing.*

(Emphasis added.)

*And see American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures* (Approved Draft, 1968) § 5.4(a)(iii), and Commentary thereto, *Allocution,* pp. 254–55 (collecting authorities). Here, as the several statements by the sentencing judge that have been quoted above make plain, when the sentencing judge said to appellant, "I will listen to what you have to say," *the sentence had already been decided upon;* it had been decided upon before the sentencing hearing, by the sentencing judge's "colleagues at our sentencing council." Accordingly, appellant's statement to the sentencing judge could not represent an exercise of appellant's right of allocution; since it could have no possible effect on the sentence, it was a meaningless exercise.

The Commonwealth is equally mistaken in its suggestion that the procedure followed by the sentencing judge was to appellant's "benefit" since as a result of it the judge "modified . . . his own inclinations to impose a more severe sentence." No doubt the sentencing judge would have imposed a more severe sentence—*if he had imposed sentence.* The point is, he did not; his colleagues at the sentencing council did. After his colleagues had decided upon the sentence, the sentencing judge simply uttered it in the courtroom. Thus appellant was not sentenced by the sentencing judge but by other judges—neither appellant nor we can know who they were (beyond knowing that they were some or all of the members of the sentencing judge's court); the sentencing judge simply acted as a conduit by which the decision of those other judges was transmitted to, and imposed upon, appellant.

None of this is to suggest that a sentencing judge should not consult with his colleagues regarding what the sentence in a given case should be. To the contrary, such consultation may be most worthwhile, resulting in a more thoughtful and just sentence, and in less disparity of sentencing on the part of the several members of the court. The fact remains: the judge who decides upon the sentence may not decide upon it until after the defendant has appeared before him, and, with the assistance of counsel, has had the opportunity to present evidence and to make legal argument relative to what the sentence should be. Never may a defendant be brought to court to be sentenced by a judge (or judges) he does not know, and never sees.

In *Standards Relating to Sentencing Alternatives and Procedures, supra,* it is said at § 7.1:

> In all courts where more than one judge sits regularly at the same place, and wherever else it is possible, it is desirable that meetings of sentencing judges be held prior to the imposition of sentence in as many cases as is practical. The meeting should be preceded by distribution of the presentence report and any other documentary information about the defendant to each of the judges who will participate. The purpose of the meeting should be to discuss the appropriate disposition of the defendants who are then awaiting sentence and to assist the judge who will impose the sentence in reaching a decision. *Choice of the sentence should nevertheless remain the responsibility of the judge who will actually impose it.* (Emphasis added.)

The Commentary to this says, at p. 298:

> Although it is to be expected that the judge who is to sentence a particular defendant will be influenced by the opinions of his colleagues, it should be made clear that the responsibility still remains with the sentencing judge. *The council is operating for his benefit, not as a device to control his conduct.* The last sentence of the section accordingly provides that *the council is not intended to usurp the function of the sentencing judge.*

(Emphasis added.)

Since the sentencing hearing is a point in the criminal process where substantial rights of the defendant may be affected, the guarantee of due process applies. *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). *See also North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), and *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The procedure adopted in this case violated due process, for it reduced appellant's statement to the sentencing judge, and his counsel's arguments, to meaningless exercises. In addition, the procedure violated Rule 1405 of the Pennsylvania Rule of Criminal Procedure, which makes plain that the defendant, with counsel, is entitled to appear before and to inform the judge who is to sentence him. The Supreme Court has left no doubt that these requirements must be met. Thus in *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976), the Court vacated sentences that had been decided upon not by the sentencing judge after the sentencing hearing but by the judge and his colleagues in advance of the hearing. And in *Commonwealth v. Riggins,* 474 Pa. 507, 378 A.2d 1229 (1977), the Court vacated a sentence because of the sentencing judge's failure to state of record the reasoning that had led him to decide upon the sentence.

It is therefore apparent that there is no merit to the Commonwealth's contention that "[a]ppellant received every possible consideration from the trial court." He did not; the consideration he was entitled to receive, but did not receive, was that suggested by his counsel at the sentencing hearing: that the trial judge disqualify himself as sentencing judge, and that sentence be imposed by another judge. In this regard reference may be made to *Standards Relating to Sentencing Alternatives and Procedures, supra,* § 5.1(a), where it is said: "To accommodate cases where it becomes necessary for another judge [*i. e.,* other than the trial judge] to impose the sentence, a system should be established to acquaint the new judge with what occurred at trial."

The judgment of sentence should be vacated, and the record remanded for further proceedings consistent with this opinion.

HOFFMAN, J., joins in this opinion.