394 A.2d 1015

**COMMONWEALTH of Pennsylvania**

v.

**Anthony J. LOWRY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Nov. 22, 1978.

Arthur H. Stroyd, Jr., and Reed, Smith, Shaw & McClay, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, and Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

Appellant was convicted by a jury on September 9, 1975 in Common Pleas Court of Allegheny County of possession of a controlled substance, carrying a firearm without a license, and former convict not to own a firearm. No appeal was taken from the judgment of sentence. The instant petition under the Post-Conviction Hearing Act[1] was thereafter filed alleging ineffective assistance of trial counsel and other deprivation of rights. Following a hearing thereon, the court granted a new trial on the possession count, arrested judgment on carrying a firearm without a license, and denied relief as to the remaining count. This appeal followed.

1. Act of January 25, 1966, P.L. 1580 (19 P.S. §§ 1180–1 et seq.)

Facts adduced at the suppression hearing and at trial were as follows. On April 17, 1975, Detectives Joiner and Craig of the Pittsburgh Police Dept., acting on the tip of an informant, proceeded to the intersection of Centre Avenue and Arthur Street in the city's Hill District to observe a suspected drug transaction. When they arrived, they observed a red and black Pontiac convertible blocking Arthur Street. Appellant was seated at the wheel, while two other individuals, Allen and Berkley, stood outside. Someone yelled, "The police" (ST. 12) and appellant drove the car away at a "high rate of speed." (ST. 12). Det. Joiner gave chase on foot while Det. Craig drove the police vehicle. A short distance away, appellant stopped the car and all occupants exited, but not before someone threw a small foil package out the window. A search of the car by Det. Craig at the scene produced a .38 caliber special under the front armrest. The officers successfully retrieved the small foil packet from the roadway and subsequent tests proved the substance therein to be cocaine.

We must first determine if, as the Commonwealth contends, appellant has waived the issues herein because of his failure to prosecute a direct appeal. Before disposition of post trial motions, appellant wrote to his trial counsel expressing his "dissatisf[action] with your handling of my case up to this point . . . Consequently, I shall effect my appeal without your further assistance." It is unclear from the record whether a lawyer argued appellant's post trial motions. No appeal from the denial thereof was ever docketed.

 Ordinarily, the failure to file an appeal compels a finding that the claims in question have been waived. PCHA, § 1180–4(b)(1); *Commonwealth v. Dimitris*, 247 Pa. Super. 486, 372 A.2d 930 (1977). We are unable to conclude, however, that the failure to file an appeal herein was a "knowing and understanding" failure, § 1180–4(b)(1). At the Post Conviction Hearing, appellant testified he first directed his trial counsel to file an appeal and to send appellant a copy of the brief. PCH Trans. pp. 82–3. Believ-

ing an appeal had been filed, appellant later discharged his trial counsel and filed his first PCHA petition, which was dismissed by the court as being "premature" during the appeal period. Appellant was not "quite sure the reason it was denied", PCH Trans. p. 84, but nonetheless requested a reinstatement of the petition. When directed by the lower court to draw a new petition, appellant complied, filing the instant petition. These attempts to seek a review of his conviction, as well as appellant's mistaken belief that an appeal on his behalf had been docketed, lead us to conclude appellant did not knowingly and understandingly fail to pursue a direct appeal. See *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974); *Commonwealth v. Olsen*, 247 Pa.Super. 513, 372 A.2d 1207 (1977).

Turning to the merits of this appeal, we consider first appellant's averments of trial counsel's ineffectiveness.[2] Initially, we note counsel will be deemed effective once we conclude that the particular choice made by counsel had some reasonable basis designed to effectuate his client's interests. "[A] finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 603, 235 A.2d 349, 353 (1968). Appellant first contends trial counsel failed to question an inference that appellant possessed the weapon found in the car. Since the gun was discovered under the middle armrest of the vehicle, appellant argues that the inference he knew of its presence was invalid, *Commonwealth v. Wisor*, 466 Pa. 527, 353 A.2d 817 (1976), and that counsel failed to argue *Wisor* to the Court.[3] We note first that *Wisor* was decided

**2.** Because this is the first stage at which appellant is represented by counsel other than trial counsel, his claim of trial counsel's ineffectiveness is properly before this Court. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

**3.** In *Wisor*, appellant was seated in the driver's seat of his automobile. Contraband was found in the space beneath the back of the front-right passenger seat. The court held, "Appellant's ownership of or presence in the car does not establish possession on the part of

after appellant's trial was concluded.[4] Counsel will not be deemed ineffective for failing to foresee future developments in the law. *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977). Moreover, counsel *did* argue, in the nature of a demurrer, that the Commonwealth had not proven appellant exercised control over the weapon, Trial Trans. p. 138, and argued the "equal access" question to the jury. These efforts by counsel do not allow us to find his stewardship ineffective.

Appellant next contends his counsel should have argued that the two counts charging firearms violations merged into one offense. The court having arrested judgments on one count (18 Pa.C.S.A. § 6106), this issue is moot. Appellant contends, however, that the issue is not moot since he was prejudiced by having to defend himself against two separate charges, where one could have been dismissed under principles of merger. This argument misconstrues the merger doctrine, which forbids double punishment where one crime necessarily involves the other. *Commonwealth v. Nelson,* 452 Pa. 275, 305 A.2d 369 (1972). "The general rule is that when one crime is a necessary ingredient of another the offenses merge *for the purposes of sentencing* and, thus, only one punishment may be imposed." *Commonwealth v. Turner,* 248 Pa.Super. 306, 375 A.2d 110, 112 (1977) (emphasis added). And in *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1976), the Supreme Court stated, "[W]here the distinct crimes set forth [in an indictment] grow out of the same transaction, differing only in degree, only one penalty can be imposed *after conviction.*" Id., 471 Pa. at 503, 370 A.2d at 719 (emphasis added). It is clear then that a defendant may be convicted of two merged crimes, yet he can be sentenced but once. Hence, assuming the two firearm violations for which appellant was prosecuted did

appellant. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974)". 466 Pa. at 531, 353 A.2d at 818.

**4.** Appellant was adjudged guilty on September 9, 1975. *Wisor* was decided March 17, 1976.

merge,[5] a motion by counsel to dismiss one count, on the basis of merger, before conviction, would have been unpersuasive.[6]

Appellant alleges his counsel should have objected when the court imposed sentence immediately following the verdict. *Commonwealth v. Middleton,* 242 Pa.Super. 421, 364 A.2d 342 (1976). This issue was not argued by appellant at the PCHA [7] hearing and cannot now be raised on appeal for the first time.

Appellant next argues he was denied his right of allocution before sentence, in violation of Pa.Rules of Crim.P. 1405(a). See *Green v. U. S.,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961); *Commonwealth v. Knighton,* 251 Pa.Super. 299, 380 A.2d 789 (1977). Our review of the record bears out appellant's complaint that he was never personally afforded an opportunity to speak before sentencing was pronounced. The proceeding, as the Commonwealth concedes, presents a lamentable departure from the guidelines imposed by our Supreme Court.[8] Normally, our remedy would be to remand for resentencing in compliance with Rule 1405. This in effect has already occurred, however, at the Post Conviction Hearing where appellant was asked what he would have said had the proper procedure been followed. Appellant testified he would have informed the

5. This question we do not decide.

6. Appellant's reliance on 18 Pa.C.S.A. § 906 is also misplaced. That section provides: "A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime". By its very language, § 906 has no application beyond Chapter 9 of the Crimes Code, Inchoate Crimes. See *Commonwealth v. Waters,* 255 Pa.Super. 107, 386 A.2d 159 (1978); *Commonwealth v. Gadson,* 234 Pa.Super. 648, fn.4, 341 A.2d 189, fn.4 (1975).

7. This issue was actually raised by the hearing court in a brief discussion with trial counsel, who was called as a witness. PCHA Trans. at 105–7. Appellant's PCHA counsel remained silent during this exchange and did not otherwise challenge the sentencing procedure.

8. Appellee brief at 16.

court that had his bill of particulars been granted, his trial strategy would have been altered. Additionally, appellant stated he would have taken the stand in his own behalf. Post Conviction Trans. at p. 87. These statements were found by the trial court to have "no effect on the sentence imposed by this Court". We will not disturb that finding.

Trial counsel was also ineffective, it is argued, in failing to raise a self-incrimination issue. Appellant's contention is: that to require a convicted felon to license his firearm is to force him to incriminate himself since any possession of a gun by a convicted felon is a crime. In short, the licensing requirement of 18 Pa.C.S.A. § 6106 (firearms not to be carried without a license) provides the proper authorities with sufficient information to prosecute for violation of 18 Pa.C.S.A. § 6105 (former convict not to own a firearm) and hence, a conviction under § 6106 would be constitutionally infirm. This "constitutional dilemma" would seem to be a question of first impression in this Commonwealth.[9] We think the issue moot, however, the court having arrested judgment on the count at § 6106.

Appellant next contends his counsel was derelict in failing to challenge the reliability of the officers' informant, citing *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and its progeny. We think, however, there was sufficient justification for the arrest of appellant and warrantless search of the automobile, quite apart of the question of the informant's reliability. As the officers arrived on the scene, one of the occupants of the automobile exclaimed, "The police". The car sped away, narrowly missing Det. Joiner who had approached the suspect's car on foot. At this point, appellant could have been arrested without a warrant for a misdemeanor committed in the officer's presence, i. e. assault. Pa.Rules of Crim.P. 101(2); *Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977); *Commonwealth v. Reeves*, 223 Pa.Super. 51, 297 A.2d

**9.** Appellant cites *Grosso v. U. S.*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and related cases in support for his proposition. But see Annotation, 28 A.L.R.3d 845, 860.

142 (1972). The subsequent, immediate search of the automobile proceeded incident to the arrest:

> Incident to a lawful arrest, police officers may conduct a warrantless search of the person arrested and the area within that person's immediate control in order to remove any weapons that might be used to facilitate escape or resist arrest, and to prevent destruction of evidence. *Chimel v. California* [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685], *supra; Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976). Whether an item has been properly seized pursuant to a search incident to arrest depends upon the facts of each case. The central question is whether the area searched is one "within which [the arrested person] might gain possession of a weapon or destructible evidence". *Chimel v. California, supra* [395 U.S.] at 763, 89 S.Ct. at 2040.

*Commonwealth v. Bess*, 476 Pa. 364, 367, 382 A.2d 1212, 1214 (1978) (footnote omitted). Such a search may extend to an automobile. *Carroll v. U. S.,* 267 U.S. 132 (1925); *Commonwealth v. Cockfield*, 431 Pa. 639, 246 A.2d 381 (1968); *Commonwealth v. Jackson*, 239 Pa.Super. 121, 362 A.2d 342 (1976). Instantly, appellant stood just outside the automobile while the search was conducted. The search was contemporaneous with the arrest. Moreover, the weapon was seized in a spot peculiarly accessible to appellant as the driver and not in a remote place or at a remote time. Compare *Cockfield, supra.* Since we find the arrest and search valid, appellant's claim of ineffective counsel is without merit.

Appellant next argues his counsel should have objected to the unlawful suppression of exculpatory evidence by the Commonwealth. The salient facts are these: At trial, appellant planned to call one Berkley, an occupant of the car in which appellant was arrested, as a defense witness.[10] When Berkley learned of this, he approached his lawyer, Attorney Mark Frank, and requested his advice on

**10.** Berkley was originally charged along with appellant but secured a dismissal of all charges at his preliminary hearing.

whether to testify. Mr. Frank was then told by two police officers involved in the case that

> . . . they really didn't care [if Berkley testified] because they get one or the other, that if Sam [Berkley] testified on behalf of the defendant, that they would go back and bring charges against Sam.

Q. And what did you advise your client to do at that point?

A. If I recall correctly, I advised him not to testify.

PCH Trans. pp. 126–7.

Appellant urges us to find the police action constituted suppression of evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Commonwealth v. Jennings*, 225 Pa.Super. 489, 311 A.2d 720 (1973). In *Jennings*, the appellant had decided to call one Vecchione as a defense witness at his trial on assault charges. The district attorney, however, informed the court that there was an unexecuted complaint against Vecchione and that the complaint would probably be served if he testified. Vecchione subsequently stated he was "intimidated" and "scared of" the prosecutor and refused to testify. This court reversed the conviction and granted a new trial, finding the prosecutor's conduct amounted to coercion and duress against the witness and constituted an abuse of prosecutorial discretion citing *Brady, supra*, and *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942). The focus of *Jennings* was not whether the prosecution may warn a potential defense witness of the possibilities of self-incrimination, see *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), but whether the warnings may be couched in such terms "as to render him incapable of making a free and untramelled decision as to whether he should testify or not". *Jennings*, 225 Pa.Super. at 493, 311 A.2d at 722. Instantly, the record would not allow us to conclude that Berkley's decision not to testify was made under duress or coercion. Berkley himself never testified as to his state of mind, as did Vecchione in *Jennings*. Moreover, Berkley's attorney stated he did not perceive the

officer's action as coercive or threatening. PCH Trans. p. 128. Finally, the lower court found as a matter of fact that there was no coercion by the prosecutor and that Attorney Frank's advice not to testify was based only partially upon police assertions. Opinion at 8.[11] Our scope of review of such findings by the lower court, which heard the testimony and could assess credibility, is very limited. *Commonwealth v. Williams*, 476 Pa. 344, 382 A.2d 1202 (1978). We will not disturb its findings so long as they are supported by the PCHA record, even though such record could support a contrary holding. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1978); *Commonwealth v. Hauser*, 450 Pa. 388, 299 A.2d 218 (1973). We think the lower court's findings are amply supported by the record. Since there was no prosecutorial abuse, counsel cannot be faulted for failing to raise the issue.

 Appellant's final contention relates to alleged prejudice flowing from the introduction into evidence of his past criminal conduct. Appellant was charged with former convict not to own a firearm, 18 Pa.C.S.A. § 6105, and the Commonwealth was required to prove, as part of the substantive offense, that appellant had been convicted of a crime of violence. To sustain this burden, the Commonwealth adduced testimony from the Clerk of Courts to show appellant had previously been convicted of robbery [12] and testimony from the arresting officer and parole agent to prove identity. See *Commonwealth v. Boyd*, 463 Pa. 343, 344 A.2d 864 (1975). This is thus not a case where a jury is asked "to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged". *Commonwealth v. Bighum*, 452 Pa. 554, 566, 307 A.2d 255, 262 (1977). See also *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). Appellant's past conviction was a

11. The Court in *Jennings* relied in large measure on the adverse reaction of the trial judge to the prosecutor's conduct. Id 225 Pa.Super. at 491, 311 A.2d at 721.

12. Robbery is a "crime of violence" within § 6105. See 18 Pa.C.S.A. § 6102.

necessary element of the crime charged and, as such, was properly admitted. See *Commonwealth v. Scoggins,* 466 Pa. 355, 353 A.2d 392 (1975).

Order Affirmed.

CERCONE and PRICE, JJ., concur in the result.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring.

I join in the majority's disposition but note that threatening the witness Berkley was inexcusable. I see no reason for ever allowing a police officer or any other agent of the Commonwealth to threaten a witness for the defense. The officer's statement in this case was not, as the majority implies, at 1020, a mere warning to Berkley concerning his privilege against self-incrimination. *See Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975). On the contrary, it was a threat that if he testified, charges would be brought against him regardless of what he said. *See generally Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *United States v. Morrison,* 535 F.2d 223, 226–27 (3d Cir. 1976); *Commonwealth v. DiGiacomo, supra; Commonwealth v. Jennings,* 225 Pa.Super. 489, 311 A.2d 720 (1973).

I nevertheless agree that the evidence, including the attorney's testimony that he wasn't coerced and that the decision not to testify was based on other factors, demonstrates that the Commonwealth did not "effectively dr[i]ve the witness off the stand." *Webb v. Texas, supra,* 409 U.S. at 98, 93 S.Ct. at 353. Thus appellant's counsel was not ineffective.

I also note that *Commonwealth v. Jennings, supra,* does not require that the witness testify that he was coerced; nor do I read the majority opinion in this case as establishing such a requirement. Where a threat is made and thereafter the witness refuses to testify, coercion may be assumed,

468

unless, as in the case at bar, evidence shows that the decision not to testify was not caused by the threat.