418 A.2d 653

**COMMONWEALTH of Pennsylvania**

v.

**Michael S. BARBER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1979.

Filed Feb. 1, 1980.

against the misconduct of the prosecutor in determining whether a retrial is barred.

148

Stanley Bashman, Philadelphia, for appellant.

Lee F. M. Kaplan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

As a result of a gang killing in which he was allegedly involved, appellant was charged with murder, voluntary manslaughter and involuntary manslaughter as well as criminal conspiracy to commit murder, possession of an instrument of crime, generally, and other weapons offenses. After a trial before Mirarchi, Jr., J. and a jury he was convicted of criminal conspiracy and possession of an instrument of crime, generally, and acquitted of the remaining charges. Post trial motions were argued and denied and appellant was sentenced to seven and one-half to fifteen years imprisonment.

In the latter part of August, 1975, appellant was a member of the Mongo Nation, a teenage gang operating in West Philadelphia.[1] On August 27, 1975, Walter Hannah, also a member of the Mongo Nation, was shot by a member of a rival gang known as the Zips. On September 1, 1975, Hannah was chased out of the neighborhood which the Zips considered to be their territory. After the second incident involving Hannah, some of the members of the Mongo Nation met and discussed the possibility of revenge on the Zips. It was decided to have a further discussion that evening at Kevin Guy's house. At about 7:00 p. m. appellant arrived at Guy's house carrying a rifle in a brown box. Some eleven Mongo Nation members, or associates, attended the meeting, including appellant, Walter Hannah, Kevin Guy, Derick Palmer, and Calvin Frisbee. A plan was devised to exact the desired revenge from the Zips.

It was known that the Zips were then having a block party a short distance from Kevin Guy's house. Appellant

1. The term "gang" was used frequently during the course of the trial.

told Hanna, Palmer and Frisbee to go to the block party and shout "Mongo" in order to induce the Zips to chase the Mongo Nation members. The members of the Mongo Nation were to lure the Zips past Guy's house where appellant was to lie in wait with his rifle. The plan was put into operation, and the Mongo Nation members went to the block party. Palmer shouted out "Mongo" and, as expected, a large number of Zips pursued the Mongo Nation members who led them past Guy's house. As the Zip members approached Guy's residence, appellant fired his rifle toward the running Zips. Someone with the Zips also fired a weapon. Rudolph Edwards, a fifteen year old boy who was among the crowd, was shot in the head and subsequently died.

On appeal, appellant argues that there are nine areas in which the court below erred. We will discuss each of these issues, although not necessarily in the order in which they were raised by appellant.

## I

Appellant's first contention is that the court below erred in allowing the prosecution to plead surprise in cross–examining its witness, Calvin Frisbee.

Prior to the trial, Frisbee gave a written statement to the police in which he stated that he and some other members of the Mongo Nation went to Guy's house and that the appellant directed them to go to the Zip's block party and when something happened they were to run back past Guy's house. Subsequently, Frisbee and Derrick Palmer went to the block party in furtherance of this plan. In his pre–trial statement Frisbee stated:

"We went up to where the crowd was . . . We talked to some girl we know as Angie. That's Mushmouth's [Palmer's] girlfriend. He was still down at the corner hollering Mongo. That's when the Zip got off the steps and was coming down the little block. They started chasing down 57th Street. They were shooting at us. I don't know who the boys were from Zip. . . . We

ran down 57th Street past Ace [appellant]. He was standing between the truck and the tree, He was shooting. He had the rifle in his hands. I couldn't tell how many shots were fired." (3.54).

At trial, Frisbee was called to testify on behalf of the prosecution. He testified that when he arrived at Guy's house that appellant was not there yet but that he came subsequently. Appellant had nothing with him when he arrived at the house. Appellant said nothing about going to the block party. Frisbee stated that he went by himself to the block party. He testified that at the block party he did not talk to anyone. He heard someone shout Mongo "real loud" and "I seen one of the guys from the Zippers come out with a shotgun, and he bust on me". He further testified at trial that after the shooting started by the Zippers he ran away with fifty or sixty people chasing him. He did not know who shouted Mongo and when he ran back to Guy's house he did not see anyone near the tree in front of Guy's house.

The testimony of Calvin Frisbee at trial was different in material respects from that given in his pre–trial statement. The assistant district attorney pleaded surprise and was permitted to cross–examine her own witness. Appellant contends that this was error as the district attorney was aware in advance of trial that Frisbee would be uncooperative with the Commonwealth.

It is within the sound discretion of the trial court to decide whether counsel may exercise the right of cross–examination of his own witness. *Commonwealth v. Dancer,* 452 Pa. 221, 225, 305 A.2d 364, 366 (1973); *Commonwealth v. Quartman,* 253 Pa.Super. 460, 466, 385 A.2d 429, 433 (1978). In order for a party to plead surprise and cross–examine his own witness, the following requirements must be met: (1) the testimony given by the witness must be unexpected; (2) the testimony must be contradictory to statements the witness has made earlier; (3) the testimony must be harmful to the party calling the witness and beneficial to the opposing side; and (4) the scope of his cross–examination may not be

excessive. *Commonwealth v. Thomas,* 459 Pa. 371, 379–80, 329 A.2d 277, 281 (1973); *Commonwealth v. Duffy,* 238 Pa.Super. 161, 167–8, 353 A.2d 50, 54 (1975).

In reviewing the record we have no difficulty in finding that the last three requirements of the test were met. A more difficult question is whether the testimony of Mr. Frisbee at trial was unexpected. We find that it was. At the trial, when the assistant district attorney claimed surprise, appellant's counsel strenuously objected on the grounds that the district attorney knew Frisbee would be hostile. The district attorney admittedly knew that Frisbee was friendly with the appellant and did not want to testify and feared reprisal if he did testify. However, she did not know he would change his testimony from the earlier statement he gave to the police and from what he previously told her. We find that the testimony of Mr. Frisbee was unexpected in that the district attorney had no reason to believe that at trial Frisbee would deviate from his statement to the police. In fact, on cross–examination by the district attorney, Frisbee testified that the statement to the police was true as far as the parts that were read to him at trial were concerned. Although the assistant district attorney knew that Frisbee did not want to testify and feared reprisals, this is not to be equated with knowledge that he would change his testimony.

## II

Appellant also contends that he was denied due process of law as a result of misconduct by the prosecutor. In support of this he cites two instances of alleged prosecutorial misconduct. He argues that it was improper for the prosecutor to warn Frisbee that he could face perjury charges depending on the content of his testimony. (Appellant's brief, page 22). The district attorney stated that she told Frisbee that if she "put him on the stand he better tell the truth because if he doesn't there is a thing called perjury". While we do not necessarily commend the phraseology used, it does not amount to prosecutorial misconduct. The prose-

cution had the right to call Frisbee and advise him that if he testified he would be subject to a charge of perjury if he did not tell the truth.

■ The second allegation of prosecutorial misconduct is based on an alleged threat by an assistant district attorney, other than the attorney who prosecuted the case, that if William Jenkins did not testify he would be subject to possible prosecution. Mr. Jenkins stated at trial that a detective also told him he could be charged with buying a gun if he did not testify.

In *Commonwealth v. Jennings*, 225 Pa.Super. 489, 491, 311 A.2d 720, 721 (1973), the district attorney threatened the principal defense witness with arrest if he testified on behalf of the defendant. The witness testified that he was "scared" of the prosecutor and after a noon recess he did not return to testify for the defendant. The Superior Court held that the threats to the witness if he testified on behalf of the defendant deprived the defendant of due process of law. 225 Pa.Super. 489, 491, 492, 311 A.2d 720, 721.

In *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), cited by the appellant in support of his contention of prosecutorial misconduct, the accused alleged that the prosecution deliberately suppressed evidence favorable to him. The United States Supreme Court held that the allegations sufficiently charged a deprivation of constitutional rights. In the case before us the prosecution made no attempt to suppress evidence favorable to the appellant. The *Jennings* case, *supra*, which involved suppression of evidence favorable to the defendant is readily distinguishable from the instant case in which the prosecution sought to have a witness testify. With respect to the testimony by Mr. Jenkins, he could have been subpoenaed by the prosecution to testify, although he was not. We do not find any conduct on the part of the prosecution that would warrant the granting of a new trial.

## III

■ Appellant also contends that the court below erred in permitting a prosecution witness, Eric Friend, to testify as his name was not contained on a list of witnesses upon which the voir dire of the jury was conducted. Appellant contends that he was denied the right to a fair and impartial jury, apparently on the grounds that a member of the jury might have had a close relationship with the witness. Appellant cites *Commonwealth v. Jackson*, 457 Pa. 79, 319 A.2d 161 (1974) in support of his argument. In that case the defendant, pursuant to the Pennsylvania Rules of Criminal Procedure, Rule 312, gave the Commonwealth notice before trial of the names and addresses of witnesses he intended to call in order to establish an alibi. The Commonwealth refused to give the defendant the names and addresses of witnesses it intended to use to establish the defendant's presence at the scene of the crime. The Supreme Court held that the failure of the prosecution to afford defendant reciprocal discovery violated his right to due process of law. The *Jackson* case is not applicable to the facts before us. In the instant case the Commonwealth gave the appellant's counsel two statements by Mr. Friend prior to calling him as a witness for the prosecution. The court allowed appellant's counsel time to review the statements prior to the witnesses' testimony. Appellant could have moved the Court for an immediate voir dire of the jury when he learned of the Commonwealth's intention to call Friend to determine if any of the jurors knew him. He failed to do this and there is no evidence that any juror in fact knew the witness. We do not find any error by the trial court in the circumstances of this case in allowing Mr. Friend to testify although his name was not on a list of possible prosecution witnesses.

## IV

■ Appellant contends that the trial court erroneously admitted evidence concerning the purchase of a rifle allegedly used in the killing of Rudolph Edwards. Appellant's argument is based on the grounds that the evidence was

irrelevant. Determination of the relevancy of evidence offered at trial requires a two step analysis. It must be determined (1) if the inference sought to be raised by the evidence bears upon a matter at issue in the case and (2) whether the evidence renders the desired inference more probable than it would be without the evidence. *Commonwealth v. Stewart*, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975).

█ The evidence established that the victim was killed by a bullet fired from a .22 caliber rifle manufactured by the Marlin Manufacturing Company. Although the weapon involved in the homicide was never located, the bullet that killed Edwards was removed from his head and submitted to laboratory tests.

The evidence that appellant considers irrelevant is the testimony of William Jenkins, a friend of appellant, who purchased a .22 caliber Marlin rifle on August 23, 1975, about a week before the homicide. Accompanying Jenkins to the store was appellant's brother and Tyrone Johnson. Tyrone Johnson supplied the money for the gun. After the purchase, the gun was placed in a long brown box at the store.

Appellant also contends that the testimony of Mr. Huntwagner, the manager of the store where Jenkins purchased the rifle, was irrelevant. Mr. Huntwagner testified from the store records that a Marlin semi–automatic .22 caliber rifle was sold to William J. Jenkins, Jr. on August 23, 1975. He also described the gun sold as one holding 17 rounds of ammunition.

The testimony of Jenkins and Huntwagner was relevant and conforms to the requirements of *Commonwealth v. Stewart, supra*. The evidence of the purchase of a specific rifle and the fact that it came in a long brown box bears upon the relationship of appellant to the weapon used in the homicide. Appellant was seen with a long brown box on the evening of the homicide. He was observed firing around seventeen shots from a rifle toward the Zips. The bullet which killed Rudolph Edwards came from the same type of

weapon purchased by William Jenkins. Shortly after the homicide police officers found .22 caliber shells lying on the floor of the room in which appellant slept. The inference that the Commonwealth wanted to establish was that the weapon purchased by Jenkins was the one carried by appellant prior to the shooting and used by him to fire the fatal shot. The second requirement of *Commonwealth v. Stewart, supra,* is met as the testimony of the two witnesses makes the inference more probable than it would be without the evidence.

## V

Appellant contends that the evidence was insufficient to sustain his conviction of criminal conspiracy. It should be noted that the appellant's acquittal on the homicide charges does not preclude a finding of guilty of criminal conspiracy. Consistency in a verdict in a criminal case is not required. *Commonwealth v. Strand,* 464 Pa. 544, 546, 547, 347 A.2d 675, 676 (1975). To establish criminal conspiracy the Commonwealth has the burden of proving by direct or circumstantial evidence, the existence of a shared criminal intent as the essence of a conspiracy is an agreement to commit an unlawful act. *Commonwealth v. Wilson,* 449 Pa. 235, 238, 296 A.2d 719, 721 (1972).

To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as the verdict winner and accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict and determine whether such evidence and inferences are sufficient. *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). Our review of the facts in this case discloses that the jury had before it sufficient evidence to find appellant involved in an unlawful agreement with some of the other members of the Mongo Nation. There is direct evidence that appellant was the instigator of the plan to lure members of the Zips past the spot where he was waiting with a rifle.

## VI

Appellant's next contention is that the trial court erred in admitting photographic exhibits which had been tampered with by witnesses for the prosecution. The record does not support this charge against the Commonwealth. The evidence objected to consisted of photographs taken by a police officer of the Mobile Crime Detection Unit. The officer took the pictures in question on September 1, 1975, the date of the alleged crime. By mistake, he wrote August 26, 1975, on the photographs. When he discovered he had placed the wrong date on the pictures he corrected the date to September 1, 1975. At trial, counsel for appellant moved for the withdrawal of the jury on the grounds that the Commonwealth had altered the evidence in the case. We find that the court below properly refused to grant the motion.

Merely changing the date on a photograph to show the correct date a picture was taken when the wrong date was inadvertently written on the photograph did not constitute tampering with the evidence in this case.

## VII

Appellant contends that the trial court also erred in denying his right for a mistrial because a prosecution witness, Calvin Frisbee, violated the court's sequestration order. Mr. Frisbee was in the courtroom during proceedings that did not involve testimony on the merits of the case but rather the application of the sequestration order to a potential witness. Frisbee was the next witness to be called by the Commonwealth and he had not been told to leave the courtroom. On the contrary, he was told to stay because only the jury was to be excused from the courtroom at that point in the trial proceedings.

From a review of the record it is very difficult to find that the witness intentionally violated the court's sequestration order. In any event, it is within the sound discretion of the trial judge to permit a witness who has violated a sequestration order to testify. In exercising this

discretion, the Judge should determine what effect, if any, the violation of the order had on the testimony of the witness. *Commonwealth v. Smith*, 227 Pa.Super. 355, 372, 324 A.2d 483, 492 (1974). The trial judge determined that the proceedings at which the witness was in attendance had no bearing on the testimony, and we see no reason to disturb his finding.

## VIII

Appellant also contends that the court below erred in not delaying the trial so that he could obtain a transcript of the trial of Walter Hannah, a prosecution witness. Hannah's trial was apparently going on at the same time as appellant's. Counsel for appellant told the trial judge that there was a strong possibility that Hannah had testified differently as to material facts in other trials which were in progress. The trial court granted appellant's counsel time to review the notes in the other trials. Counsel for appellant, who is also appellant's counsel on appeal, stated to the trial judge that there was no inconsistency in Hannah's statement and "[a]t this time after reviewing the matter, I do not intend to press that issue at all." Appellant's contention that he was denied due process by the refusal of the trial court to order the notes of testimony from the trials of appellant's co–defendants is without merit, especially since he expressed his satisfaction that Hannah had not testified differently in the other trials.

## IX

Appellant argues that the court below erred in refusing to transfer his case to the juvenile court. At the preliminary hearing appellant moved to have his case transferred to juvenile court for a hearing on whether the case should be certified to common pleas court. The motion was denied. Following appellant's conviction the trial court conducted a hearing on appellant's motion to transfer the case to juvenile court and this motion was also denied.

The "Juvenile Act" provides that if the defendant is a child, then in criminal proceedings "other than murder" the court shall halt the proceedings and where appropriate transfer the case to juvenile court. In a criminal case involving murder, if the defendant is under 18 years of age "the case may similarly be transferred . . . ." 11 P.S. § 50–303 replaced by 42 Pa.C.S.A. § 6322.

". . . [U]nder the new statute [Juvenile Act] the determination of whether the interests of state and society require prosecution of murder on an indictment is within *the sound discretion* of the Common Pleas Court." *Commonwealth v. Pyle*, 462 Pa. 613, 618, 342 A.2d 101, 104 (1975). Emphasis in original.

The crime of murder is within the original and exclusive jurisdiction of the criminal courts and when a juvenile is charged with murder it is the juvenile's burden to show that he does not belong in the criminal court.

"In other words, it is the youth who must prove that he belongs in the juvenile setting by showing his *need* and *amenability* to the 'program of supervision, care and rehabilitation' which he would receive as a juvenile. In the event the evidence does not affirmatively demonstrate that he is the kind of youth who would benefit from the special features and programs of the juvenile court system and in the event no special reason exists for sparing the youth from adult prosecution and punishment (as for instance, evidence of mental illness or retardation) jurisdiction would necessarily remain within the criminal court system." *Commonwealth v. Pyle, supra*, 462 Pa. at 622, 623, 342 A.2d at 106–107.

Appellant did not demonstrate in any way that he would benefit from the procedures in the juvenile court system and on the contrary his past record of thirteen juvenile arrests and five convictions, beginning at the age of eight and for offenses which became more serious as he grew older, indicates to us that he was not amenable to rehabilitation. We find that the court below did not abuse

its discretion in refusing to transfer this case to the juvenile court.

The final question for us to determine is the lawfulness of the sentence. Appellant was sentenced to consecutive terms of five to ten years imprisonment for criminal conspiracy and two and one–half to five years for possession of an instrument of crime, generally. Imposition of a proper sentence under the Sentencing Code, 18 Pa.C.S.A. §§ 1301, et seq. (1973) is a matter within the sound discretion of the trial court. The determination of the court will not be upset unless there is a manifest abuse of discretion. *Commonwealth v. Knight*, 479 Pa. 209, 212, 387 A.2d 1297, 1299 (1978). The trial judge properly considered the serious nature of appellant's offenses and his background as a juvenile offender in imposing sentence.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.