## STATE v. LEONARD EDWARD JENSEN.

184 N. W. (2d) 813.

March 12, 1971—No. 41864.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy* and *Rosalie E. Wahl,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *James M. Kelley,* Assistant Attorney General, and *Darrell C. Hill,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

Defendant, Leonard Edward Jensen, appeals from a judgment convicting him of burglary of a farm home near Albert Lea, Minnesota.

The evidence implicating defendant in the crime was the testimony of two witnesses, Marilyn Armell and Dale Olson. Their testimony, although otherwise uncorroborated, was clearly sufficient to sustain the conviction if, but only if, they were not themselves accomplices to the crime. Minn. St. 634.04 provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The testimony of Miss Armell and Olson may be briefly stated. They, together with defendant Jensen and one Fred Armell, took a ride in Olson's car on the evening of July 3, 1968. Marilyn Armell was Olson's girlfriend and Fred Armell's cousin. She was at that time on parole from the Minnesota Home School. Olson, at the time of trial, was serving a sentence in the State Prison for an unrelated burglary.

The automobile in which the foursome was riding stalled about a mile out of Albert Lea, a short distance from a farm home owned by one Roger Nelson who, with his family, was at that time absent on vacation. Defendant and Fred Armell walked to the Nelson home to obtain gasoline. Finding no one at home, they helped themselves to a can of gas and returned to the stalled automobile. The car would not start, so the two went again to the Nelson home, returning with Nelson's tractor, with which they undertook to push the automobile. The two went to the Nelson home a third time, returning with Nelson's battery, with which Olson finally started his automobile.

Miss Armell and Olson had remained with the stalled automobile during the repeated absences of Fred Armell and defendant at the Nelson farm.

After starting his automobile, Olson drove to the Nelson farm, turned around in the driveway, and apparently parked a short distance from the Nelson home. Miss Armell testified that defendant and Fred Armell were not driven to the farm by Olson, having gone back to the farm before Olson started the automobile and without stating what they intended to do. Olson, on the other hand, testified that he dropped them off in the driveway so they could pick up "some stuff." Both, however, testified that

they themselves had remained in the parked automobile and had not entered the home.

Defendant and Fred Armell thereafter returned to the automobile with a rifle, tape recorder, ring, and other items. The foursome then drove away from the premises.

The burglary was investigated by the sheriff of Freeborn County. He observed footprints around the Nelson tractor and determined, from tracks on the road, that the tractor had been recently moved. He recovered a rifle from Dale Olson, a tape recorder from the home of Fred Armell's father, a ring from a relative of Marilyn Armell, and certain other items from the side of the road. All these items answered Nelson's description of property missing from his home after the burglary.

No evidence was introduced by defendant, who rested on the defense that Miss Armell and Olson were themselves accomplices as a matter of law and that no other evidence tended to convict him of the burglary.

1. The general test for determining whether a witness is an accomplice is whether he could have been indicted and convicted for the crime with which the accused is charged. 7 Wigmore, Evidence (3 ed.) § 2060; State v. Durnam, 73 Minn. 150, 75 N. W. 1127; State v. Sweeney, 180 Minn. 450, 231 N. W. 225; State v. Mastrian, 285 Minn. 51, 171 N. W. (2d) 695, certiorari denied, 397 U. S. 1049, 90 S. Ct. 1381, 25 L. ed. (2d) 662, among others. A corollary, as stated in State v. Tennyson, 212 Minn. 158, 162, 2 N. W. (2d) 833, 836, is that "[w]here the acts of several participants are declared by statute to constitute separate and distinct crimes, the participants guilty of one crime are not accomplices of those who are guilty of a separate and distinct crime." So tested, a person who feloniously receives stolen goods is not an accomplice of the thief, State v. Rosenberg, 155 Minn. 37, 192 N. W. 194; and an accessory after the fact is not an accomplice, State v. Matousek, 287 Minn. 344, 178 N. W. (2d) 604, and State v. Lyons, 144 Minn. 348, 175 N. W. 689.

2. We hold that the trial court properly submitted to the jury

the issue of whether the two witnesses against defendant were in fact his accomplices. The rule governing submission of such issue was stated in State v. Hopfe, 249 Minn. 464, 471, 82 N. W. (2d) 681, 686:

"Where the facts are undisputed and capable of but one inference with respect to the participation of a witness in the crime for which an accused is on trial, it is for the court to determine whether such witness is an accomplice. [Citations omitted.] Conversely, only where evidence tending to connect a witness with the crime is disputed or susceptible of different interpretations does the question of the complicity of the witness become one of fact for the jury. [Citations omitted.]"

The evidence does not conclusively establish that Miss Armell and Olson were accomplices of defendant in this burglary. Although their patent unreliability and the circumstances surrounding their presence at the scene of the crime are susceptible of an inference of complicity, their testimony did not compel such inference as a matter of law. Their testimony contained no admission that they intentionally advised, aided, or conspired with the defendant in the commission of the crime, Minn. St. 609.05, as distinguished from thereafter aiding defendant to avoid arrest, § 609.495, or receiving some of the stolen property from him, § 609.53.

The instructions of the trial court, in addition to quoting the statute itself, undertook, in simple language, to paraphrase the controlling principles of law:

"* * * Now it is for you to determine as a fact issue what part, if any, the witnesses Dale Olson and Marilyn Armell played in the episode of July 3, 1968, at the Nelson home. If, after considering all of the evidence, you find either or both of the witnesses Marilyn Armell and Dale Olson, to have been accomplices as described by these instructions, and by the statute [§ 634.04] just read to you, then you must determine if such testimony has been corroborated sufficiently to connect the Defendant with

the burglary. If in fact either Marilyn Armell or Dale Olson, or both, were, or was not an accomplice as described by these instructions, then this particular statute has no application, and you would evaluate such witness's testimony as you would any other witness. Further, if you find that either or both Marilyn Armell and Dale Olson harbored, concealed or aided anyone to avoid arrest after commission of a burglary, or intentionally received or concealed stolen property as a result of the commission of a crime at the Nelson home on July 3, 1968, *but find that these witnesses did not participate in the commission of any crime at the Nelson home itself*, then such witness would not be an accomplice as defined by these instructions, notwithstanding any separate and distinct offense they themselves, or either of them, may have committed afterward. In such a situation you would evaluate the testimony of such a witness as you would any other witness." (Italics supplied.)

Defendant contends that the italicized clause was an improper instruction because the word "participate" is too vague and because the phrase "at the Nelson home itself" might lead the jury to think that the witnesses would be accomplices only if they personally broke and entered the Nelson home. He did not, at trial, either object to that language or aid the court with alternative language. We think the language, read in full context, reasonably informed the jury of the critical distinction between being actors in the burglary and accessories after the burglary.

Affirmed.