STATE v. LANDON BRANT SWYNINGAN.

229 N. W. 2d 29.

May 2, 1975—No. 45010.

*Jerod H. Peterson*, Legal Rights Center, Inc., for appellant.

*Warren Spannaus*, Attorney General, *William B. Randall*, County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for respondent.

Heard before Rogosheske, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

PER CURIAM.

Defendant was convicted of unlawful distribution of heroin after a trial before the district court sitting without a jury. Minn. St. 152.09, subd. 1; § 152.02, subd. 2(2). Defendant appeals from the judgment of conviction, and we affirm.

Two issues are presented on this appeal. Was defendant's conviction based on the uncorroborated testimony of an accomplice and thus unlawful under § 634.04? Did a comment made by the prosecutor prevent a key defense witness from testifying, thus denying defendant the right to present evidence in his own defense?

Defendant was convicted of distributing heroin to Beverly Ann Johnson. Ms. Johnson testified for the state at defendant's trial. Defendant asserts that Ms. Johnson was his accomplice and that under § 634.04 he cannot be convicted on the basis of her uncorroborated testimony.

Beverly Ann Johnson, at all times relevant to the instant case, was acting as a paid informer for the Metropolitan Area Narcotics Squad (MANS). During the period from October 5, 1973, to November 23, 1973, Ms. Johnson made 40 to 50 purchases of heroin and cocaine on behalf of MANS. Ms. Johnson, herself a heroin addict, was first approached by an agent of MANS while she was in the Ramsey County jail after an arrest on a forgery charge, and Ms. Johnson agreed to begin working for MANS. During the time she worked for MANS, Ms. Johnson "skimmed" enough heroin to support her own habit from the heroin buys made on behalf of MANS. While MANS was aware that Ms. Johnson was an addict, it was not aware of the skimming.

On October 28, 1973, Ms. Johnson and Russell Semo, a MANS agent, were in an apartment furnished to Ms. Johnson by MANS when Ms. Johnson received a phone call from Leon Wagner, whom Ms. Johnson described as a heroin addict. Ms. Johnson testified that Leon Wagner told her to meet him at the residence of Barbara Bork from which they would drive to make a heroin purchase. Ms. Bork was also described by Ms. Johnson as a heroin addict.

Ms. Johnson was driven to the vicinity of Ms. Bork's residence by Semo. Before leaving Semo's car, Ms. Johnson was subjected to a shakedown search of her person. She had also been subjected to a more thorough search earlier in the day at the MANS office. Both searches were designed to be sure that she had no narcotics or excess money when she went to meet Leon Wagner. The searches turned up nothing.

Semo testified that Ms. Johnson entered Ms. Bork's residence and had been there for approximately one hour when, at 5:20 p. m., two men in a green Toyota arrived. Ms. Johnson testified that the two men were

Leon Wagner and his brother, Ronnie. Ms. Johnson and the two Wagners soon emerged and drove to a residence on Cedar Avenue in Minneapolis. After only a few minutes, the three returned to Ms. Bork's residence. All this was observed by Semo, who followed the trio in his own car.

At 6:30 p. m. Ms. Johnson and the two Wagners left Ms. Bork's residence and traveled in the Toyota to 711 Dayton Avenue in St. Paul, where Ronnie Wagner left the car and did not return. Semo then followed Ms. Johnson and Leon Wagner as they drove to 1020 Dayton Avenue, defendant's residence, where Leon Wagner left the car only to return after a few minutes. The pair, still under the surveillance of Agent Semo, then traveled to the Metropolitan Businessmen's Club on Concordia Avenue in St. Paul. Ms. Johnson testified that she and Leon Wagner parked on the street near the club and that shortly thereafter a second car, owned by defendant, pulled into a nearby lot. Ms. Johnson testified that defendant got out of this second car and that Leon Wagner got out of the Toyota and walked over to meet defendant. She testified that Wagner returned to the Toyota and that a few minutes later defendant walked over to the Toyota and handed her through the window a beer can containing a bagged, brownish-colored powder, which was later identified as heroin. After defendant handed Ms. Johnson the can, she testified that she handed defendant the $150 which Semo had given her for the purpose of making the purchase.

During this period of time, Semo was parked on a side street some 60 to 100 feet from where Leon Wagner and Ms. Johnson were parked. He testified that he observed defendant walk to the passenger side of the car, where Ms. Johnson was seated, and reach his hand into the window on that side of the car. Semo, however, could not say what had passed between defendant and the car.

Ms. Johnson testified that after the transaction she and Leon Wagner returned to Ms. Bork's residence. She said that at this time she skimmed some of the powder that she had just bought from defendant and that both she and Leon Wagner "shot it up." Later, Ms. Johnson walked to Semo's car and handed him the can and the remaining powder.

On November 23, 1973, Semo returned to the club and arrested defendant, who was later indicted on the charge of unlawful distribution of heroin.

Defendant testified at the trial and acknowledged that he had spoken with Leon Wagner on October 28, as Leon came out of the club. Defendant testified that Leon had asked for drugs but that he (defendant)

didn't fool with drugs. He testified that it was the only time Leon Wagner had asked him for drugs.

At trial, Leon Wagner was called to testify by defendant and asserted his privilege against self-incrimination on the advice of his attorney. Defendant's counsel then requested that the court grant Leon Wagner transactional immunity from prosecution pursuant to Minn. St. 609.09, which provides that under certain circumstances a prosecutor may request that a witness who claims the privilege be granted immunity. Defense counsel's request was denied. During the course of the discussion on the motion, which was held in the judge's chambers and in the presence of Leon Wagner, the prosecutor made the following statement:

"* * * And number three, I believe that aside from the fact that we do not have a statutory basis for Mr. Ray's request here that the facts will certainly show that Mr. Wagner would incriminate himself by in any way testifying about his involvement in this particular case and may well hamper his other case which is presently pending."

Defendant claims that this statement by the prosecutor intimidated Wagner and had the effect of ensuring that Leon Wagner would not change his mind and testify.

1.  Defendant asserts that Ms. Johnson was his accomplice and that he cannot be convicted on her uncorroborated testimony. We hold, however, that Ms. Johnson was not defendant's accomplice. Minn. St. 634.04 provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The general test for determining whether a witness is an accomplice for purposes of § 634.04 is whether he could have been indicted and convicted for the crime with which the accused is charged. State v. Jensen, 289 Minn. 444, 184 N. W. 2d 813 (1971). A corollary is that where the acts of several participants are declared by statute to constitute separate and distinct crimes, the participants guilty of one crime are not accomplices of those who are guilty of a separate and distinct crime. State v. Tennyson, 212 Minn. 158, 2 N. W. 2d 833 (1942). Thus, a person who feloniously receives stolen goods is not an accomplice of the thief, State v. Rosenberg, 155 Minn. 37, 192 N. W. 194 (1923); and an accessory after the fact is not an accomplice of the principal, State v. Matousek, 287

Minn. 344, 178 N. W. 2d 604 (1970); State v. Jensen, *supra*. Similarly, one who receives heroin cannot be an accomplice of a person charged with distributing heroin.

But defendant argues that he could have been charged as an accessory[1] in the distribution of heroin by Ms. Johnson to Leon Wagner, in which case defendant and Ms. Johnson would be accomplices. This argument is without merit. The incident in which Ms. Johnson and Leon Wagner "shot up" the heroin skimmed from the heroin purchased from defendant was a separate and distinct transaction from the distribution for which defendant has been charged. Since it is a separate transaction, it would also be a separate and distinct crime. Participants guilty of one crime are not accomplices of those guilty of a separate and distinct crime. See, State v. Monroe, 142 Minn. 394, 172 N. W. 313 (1919).

2. Defendant's second contention, that the prosecutor intimidated a key defense witness, is also without merit.

Defendant cites Commonwealth v. Jennings, 225 Pa. Super. 489, 311 A. 2d 720 (1973). In Jennings, the defendant was charged with assault in connection with a stabbing that occurred during a fight between two groups of boys. During the trial the defendant called one Vecchione, who was present on the night in question and who was to be a principal defense witness. Before the witness entered the courtroom, the prosecutor informed the court that there was an unexecuted complaint outstanding against the witness and that if he testified he would no doubt incriminate himself. The assistant district attorney then advised the court that whether an arrest warrant would issue depended in large part on whether the witness testified. The prosecution admitted that it was charging Vecchione with being a participant in the general assault, a role which 20 or 30 other boys had played and for which no one had been prosecuted. Thus, virtually every exculpatory witness that appellant could call was susceptible to a similar threat. When Vecchione entered the courtroom, he was advised of the complaint. The discourse between the court and the prosecutor led Vecchione to say he was "intimidated" and "scared of" the prosecutor. He was advised to confer with an attorney, and after having done so he did not return to court. The trial judge in Jennings had harsh words for the prosecutor (225 Pa. Super. 491, 311 A. 2d 721):

---

[1] Minn. St. 609.05, subd. 1, provides: "A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

"* * * 'Frankly, I have never had this experience before, either. I don't think I have ever seen a more blatant abuse of the criminal process than what occurred here this morning. I am really shocked. . . . Threatening with an arrest. In my many years as a Judge and seven years as a prosecutor myself, and—I have never had an experience like this. . . . I want to turn this tactic. . . . I am going to have the notes transcribed. I will refer it to the proper authority. . . . This is outrageous.' "

In holding that the prosecutor's actions had violated the defendant's constitutional rights, the Pennsylvania Superior Court quoted Webb v. Texas, 409 U. S. 95, 98, 93 S. Ct. 351, 353, 34 L. ed. 2d 330, 333 (1972), to the effect that "the requisite warnings may not be given in a fashion which exert 'such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify.' " 225 Pa. Super. 492, 311 A. 2d 722. The court noted that the effect on the witness was to convince him that the price of his testimony was his arrest regardless of the nature of his testimony and held that the actions of the prosecutor constituted a denial of the defendant's Fourteenth Amendment rights.

As is apparent, the facts in Jennings are markedly different from those of this case. Here, the witness, Leon Wagner, claimed the privilege on his own initiative and on the advice of his own attorney. The prosecutor's comment came after the witness claimed the privilege and while the trial judge and counsel were discussing the propriety of the court's granting a defense witness immunity from prosecution. Defendant has offered no affirmative evidence to show that the witness was in fact intimidated or that his choice was anything other than voluntary. Counsel for defendant did not object to the prosecutor's statement at the time it was made, and in fact there is nothing to indicate that anyone in the room thought anything of the prosecutor's comment. There was no threat, no intimidation, and we find nothing which would justify a new trial.

Affirmed.