# ANTHONY TUCKER v. STATE.

245 N. W. 2d 199.

July 30, 1976—No. 46286.

*C. Paul Jones*, State Public Defender, and *Gregory A. Gaut*, Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *Gary W. Flakne*, County Attorney, and *Vernon E. Bergstrom, David W. Larson, Phebe Haugen*, and *Lee Barry*, Assistant County Attorneys, for respondent.

*James J. Krieger* and *Linda Gallant*, Law Student, for Legal Rights Center, Inc., amicus curiae, seeking reversal.

Heard before Rogosheske, Kelly, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

Defendant appeals from an order of the district court denying his petition for postconviction relief. We affirm.

Defendant was convicted by a jury of second-degree murder [1] chiefly on the uncorroborated testimony of Sandra Jean Sims. That testimony was as follows: Ms. Sims, who lived with the defendant at 1717 Thomas Avenue North in Minneapolis, retired for the night at approximately 10 p. m. on September 25, 1973. Defendant awakened her between 2 and 3 a. m. and told her to

---

[1] Minn. St. 609.19. Second-degree murder was submitted to the jury as a lesser included offense of first-degree murder, Minn. St. 1974, § 609.185, the offense charged in the indictment.

get up and come downstairs with him. She put on her robe and accompanied defendant downstairs and outside to a car. When they arrived at the car, she noticed that there was a person waiting in the driver's position. Defendant told her to get into the front seat. She did so; and defendant got into the back seat. The three drove up and down several streets and alleys in the area, during which time the driver (who was to become the decedent) told Ms. Sims that he was a printer for the Minneapolis Star and Tribune.

The car stopped in an alley behind 1811 Upton Avenue North. Defendant then told the driver to turn off the automobile's lights and engage in sexual intercourse with Ms. Sims. As the driver and Ms. Sims disrobed and prepared to slide down onto the seat, the driver suddenly turned toward the back seat. Upon observing that defendant had a shotgun, the driver asked the defendant why he wanted to kill him, and protested that he had no money. The defendant began to strike the driver on the back of the neck with the shotgun. While he was striking the driver, defendant asked Ms. Sims to check his pockets, which she did, finding only a little change and half a sandwich. The driver attempted to get out of the car, and defendant shot him with the shotgun. Defendant and Ms. Sims then fled on foot to their residence. Thereafter, she gave defendant money and accompanied him to Louisiana where she and defendant stayed with defendant's relatives. Upon returning to Minneapolis, both were arrested on November 26, 1973. Ms. Sims testified that her actions in obeying defendant's instructions throughout the incident were based on fear.

Testimony of several police officers and other persons fixed the time of the killing at about 3 a. m., identified the decedent as James Hultman, a printer at the Minneapolis Star and Tribune Company, and described the decedent's wound as characteristic of a wound caused by a shotgun discharged within close proximity to one's body. The alleged murder weapon, a shotgun, was not connected with defendant or introduced in evidence because of foundational problems. While the testimony of these

other witnesses certainly tends to show the commission of the murder and the circumstances thereof, the state cites no testimony nor can we find any which reasonably tends to corroborate the testimony of Ms. Sims that defendant was the murderer.

Defendant raises three issues on this appeal:

(1)   Did the trial court err in failing to hold Ms. Sims an accomplice as a matter of law?

(2)   Did the prosecutor's opening statement and certain other events at trial prejudice defendant by bringing to the attention of the jury unavailable and inadmissible evidence?

(3)   Did the prosecutor's final argument prejudice defendant by commenting on defendant's failure to testify in response to the testimony of Ms. Sims?

Minnesota law does not permit conviction based only on the uncorroborated testimony of an accomplice. Minn. St. 634.04 provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The trial court properly instructed the jury on the definition of "accomplice" and the effect of accomplice testimony, but defendant contends that the court should have held that Ms. Sims was an accomplice as a matter of law and set aside the verdict of guilty.[2] Defendant argues that Ms. Sims was guilty of intentionally aiding, advising, or conspiring with defendant to commit murder.

In State v. Swyningan, 304 Minn. 552, 229 N. W. 2d 29 (1975), this court stated the test for determining whether a witness is an accomplice:

---

[2] Since the record reveals no corroboration, defendant would be entitled to reversal if Ms. Sims were found to be an accomplice as a matter of law. See, State v. Jensen, 289 Minn. 444, 184 N. W. 2d 813 (1971); State v. Elsberg, 209 Minn. 167, 295 N. W. 913 (1941).

"The general test for determining whether a witness is an accomplice for purposes of § 634.04 is whether he could have been indicted and convicted for the crime with which the accused is charged. State v. Jensen, 289 Minn. 444, 184 N. W. 2d 813 (1971). A corollary is that where the acts of several participants are declared by statute to constitute separate and distinct crimes, the participants guilty of one crime are not accomplices of those who are guilty of a separate and distinct crime. State v. Tennyson, 212 Minn. 158, 2 N. W. 2d 833 (1942). Thus, a person who feloniously receives stolen goods is not an accomplice of the thief, State v. Rosenberg, 155 Minn. 37, 192 N. W. 194 (1923); and an accessory after the fact is not an accomplice of the principal, State v. Matousek, 287 Minn. 344, 178 N. W. 2d 604 (1970); State v. Jensen, *supra*. Similarly, one who receives heroin cannot be an accomplice of a person charged with distributing heroin." 304 Minn. 555, 229 N. W. 2d 32.

Whether a witness is an accomplice is a question for the jury unless the facts are undisputed or compel but a single inference. State v. Smith, 264 Minn. 307, 119 N. W. 2d 838 (1962); State v. Hopfe, 249 Minn. 464, 82 N. W. 2d 681 (1957); State v. Elsberg, 209 Minn. 167, 295 N. W. 913 (1941).

In the instant case, the issue whether Ms. Sims was an accomplice was plainly for the jury. Her testimony is the only account of the killing on the record and it does not compel the inference that she took an active part in the planning or execution of decedent's murder. She testified that she followed defendant's directions out of fear and did not participate in the shooting of decedent. While parts of her story may have been suspect, the jury was entitled to weigh her credibility, and, at least in the absence of contradictory evidence, conclude that she was not a willing or intentional participant in the crime of murder. State v. Smith, *supra*.

Defendant asserts misconduct in the actions of the prosecutor in referring to the expected testimony of Thomas Bell and a certain shotgun in opening argument. Bell was later called as a wit-

ness by the bailiff, but he was not present and did not respond. The shotgun, which was not introduced because of foundational problems, was held by an officer in the back of the courtroom at one point in the trial. Defendant argues that these events resulted in such prejudice that he was denied a fair trial.

This court, in State v. Kline, 266 Minn. 372, 382, 124 N. W. 2d 416, 423 (1963), set forth the standard for permissible prosecutorial opening statements:

"The prosecution may outline the facts in the opening statement which he expects to prove to aid the jury in following the testimony. This statement is not evidence but a recital of factual claims expressed with an intention and expectation that testimony will be offered and received to support them. *If the facts are stated in good faith with reasonable grounds to believe that the evidence to be offered in proof of such facts is admissible, no error is committed.*" (Italics supplied.)

The following are excerpts from the prosecutor's opening statement:

"There will be other officers testifying on other matters which will be evidence, including one officer who will testify as to his finding what would be called commonly a sawed-off shotgun, and where he found it and the circumstances of that.

\* \* \* \* \*

"The State's next witness is expected to be a young man named Thomas Louis Bell, also known as Butch, who will describe that he's known the defendant for sometime. He will describe that he's had some associations with him from time to time here in town. He is expected to describe to you that he saw the defendant the day after the shooting in the alley, 1800 block on Upton, and he will tell you that, expectedly, the content of that conversation with the defendant."

The record reveals that the prosecutor believed that Ms. Sims could identify a sawed-off shotgun found by police and link it to the defendant. The trial court subsequently ruled that the

prosecutor's attempted foundation was incomplete because he had not tied the defendant to the place where the gun was found. The record also reveals that the prosecutor had been assured by Bell and Deputy Chief Quinn that Bell would testify if asked, but that Bell called the prosecutor on the day he was to testify (after the opening argument) and informed him that he did not want to testify because he was concerned for the safety of his family. However, the prosecutor believed that Bell had, in their telephone conversation, left open the possibility that he still might appear and testify. He therefore called Bell as a witness, but Bell could not be found. The postconviction court found that the prosecutor acted reasonably and in good faith in making the opening statement and calling Bell. There is no substantial evidence on the record to refute his finding. Furthermore, the references in opening argument were so brief and skeletal and the act of calling the witness so routinely done that the possibility of any significant influence on the jury by the failure to produce the evidence referred to is remote.

As to the display of the shotgun in the courtroom, Judge Fosseen, who presided over the trial and postconviction hearing, found that there was no suggestion of any prejudice to defendant. In fact, the jury had already heard the opinion of the pathologist that decedent had been killed by a shotgun. Since the prosecutor did not in any way call the weapon to the jury's attention or suggest anything about it, we hold that no prejudicial error was committed. See, State v. Guevara, 270 Minn. 356, 133 N. W. 2d 492 (1965).

In an attempt to rebut counsel's suggestion in cross-examining Ms. Sims that she was protecting some other person who had killed decedent the prosecutor made the following remarks in his final argument:

"Now how about this idea?, What would she gain by lying under several circumstances which I will point out to you?

"First of all what would she gain by lying and by putting the wrong man in the car with her and Hultman, grabbing up some-

body else she knew, Harry Jones, rather than the guy who was really there—in other words, Anthony Tucker wasn't there; somebody else was the murderer—what would she gain by that? Now she told us that she expected or thought it would be helpful for her if she gave a statement. The police brought her down, they told her what they were investigating. They explained to her the various possibilities, which included her being charged as an accomplice or whatever, and said, 'Do you want to talk to us about it?' She told us her father called a lawyer, and farther on in the discussion she gave them a statement.

"All right. When she did that—let's accept the defense's view on this—when she did that, she did it to help herself. Now that's believable. That's reasonable. Anybody in those circumstances in a car when somebody gets blown out of there with a shotgun has to feel that they've got a problem. So she has—she thinks—an opportunity to help herself by telling what happened. So she does so. She tells us. Now how does it help her to name the wrong man when she could get just as much help naming the right man? We have to think about that. I think we have to think very carefully about it.

"The other side of that coin is: How could that have hurt her, if in fact she is trying to help herself, if she just grabs a name out of left field some place and says, 'Mr. Whoever,' what are the possibilities there? The possibilities are that that man could very well prove to the cops or anybody else, if necessary, that that night he was in St. Paul or that—

"MR. KRIEGER: Objection to the argument.

"THE COURT: Overruled.

"MR. BYRNE: If she'd try to put an innocent man in that car, that would be a possibility. The man could tell the police officers, 'I don't know where you got my name. I was playing poker in South Minneapolis that night.'

"MR. KRIEGER: Same objection, Your Honor. There is no burden on the defense.

"THE COURT: That is true, there is no burden on the defense,

but he is theorizing as to a situation. Overruled. I will cover that in my instruction."

When defendant moved for a mistrial and argued that the prosecutor was suggesting that defendant had the burden of providing an alibi, the court remarked that he did not understand the argument to impose such a burden. He thereafter fully and correctly instructed the jury as to the burden of proof in a criminal case.

While the type of argument used by the prosecutor in this case is not to be encouraged, neither are defense counsel's suggestions and fishing expeditions regarding an unknown party. In this case the prosecutor's comment was a brief one and there was no evidence to support defense counsel's unknown murderer theory and ample evidence, in the form of Ms. Sims' testimony, to establish defendant's guilt. Furthermore, the jury was fully instructed on the state's burden. Under these circumstances, any prosecutorial indiscretion did not prejudice the defendant's right to a fair trial.

Affirmed.