*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1450**

State of Minnesota,
Respondent,

vs.

Dontrell Dyna Flowers,
Appellant.

**Filed July 28, 2014
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1113822

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Hooten, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

On appeal from his conviction for being a prohibited person in possession of a

firearm, appellant argues that the district court erred by (1) denying his motion to

suppress evidence based on a confidential informant's tip; (2) suppressing evidence related to his defense; (3) ruling that his prior felony conviction could be used for impeachment purposes; and (4) denying his request for an evidentiary hearing regarding jury misconduct. Appellant also alleges several instances of prosecutorial misconduct. Because we conclude that the district court did not err, and any prosecutorial misconduct did not result in prejudice to appellant, we affirm.

**FACTS**

On the evening of May 10, 2011, after receiving a tip from a confidential informant that appellant Dontrell Dyna Flowers was always in possession of a gun, two police officers engaged in surveillance of a house located in north Minneapolis, which was the residence of C.P., Flowers's girlfriend. From their position on the street, the officers saw a black suburban parked behind the residence and observed Flowers walk from the house to the vehicle while carrying a multi-colored light-and-dark-blue towel or two towels. The officers saw Flowers lean into the vehicle at the driver's door for several seconds, emerging empty-handed. Flowers got into the vehicle, and police followed him as he drove away. Another officer initiated a traffic stop and ordered Flowers out of the vehicle.

Police searched the vehicle, finding a blue towel in the bottom compartment of the center console, which was wrapped around a handgun and an extra magazine. Another towel, in a darker shade of blue, was found on the backseat. When questioned, Flowers told an officer that he had been at his girlfriend's house, that he left to go wash her car,

2

and he did not know that the gun was in the car. He also stated that his DNA would not be on the gun. The recovered gun was never tested for fingerprints or DNA evidence.

Flowers was charged under Minn. Stat. § 624.713, subds. 1(2) and 2(b) (2010), as a prohibited person in possession of a firearm. Flowers moved to suppress evidence obtained as a result of the search and seizure, arguing that the information received from the confidential informant was not reliable and that police did not have probable cause to stop, arrest, or search Flowers. The district court denied this motion.

Before trial, Flowers stipulated that he was a person prohibited from possessing a firearm. He also moved to suppress evidence of his prior conviction from being used as impeachment evidence and moved to admit evidence about the history of the gun, including its link to two prior incidents. The court denied both motions, but limited the state to impeachment using an unspecified felony conviction only.

At trial, jurors heard testimony from C.P. and three police officers. C.P. testified that Flowers was driving her car when he was stopped. She also testified that the recovered gun was hers, claiming that she had bought it on the street from someone she knew a couple of weeks before the stop for safety reasons and that she had forgotten to take it out of her car that day. Flowers waived his right to testify. The jury found Flowers guilty of being a prohibited person in possession of a firearm.

After trial, the jury foreperson wrote to the judge expressing concern that one juror acquiesced to the rest in finding Flowers guilty. Flowers moved for a new trial and a hearing to impeach the verdict. The district court denied the motions and sentenced Flowers to 60 months in prison. This appeal followed.

3

**D E C I S I O N**

## I.    Motion to suppress

On appeal, Flowers states that there was insufficient corroboration of the tip provided by the confidential informant to establish probable cause for the stop and search. But because Flowers did not provide an argument with relevant legal authority in his brief, this issue is waived.

Flowers's attempt to incorporate a 15-page memorandum into a brief that is already 41 pages long is a clear violation of the rules of this court. *See* Minn. R. Civ. App. P. 132.01, subd. 3 (providing that, except with good cause and permission of the court, a principal brief must not exceed 45 pages, unless it contains no more than 14,000 words or 1,300 lines of text and is accompanied by a certificate of compliance with one of these exceptions). Flowers did not obtain permission from this court to file a brief in excess of the 45 page limit, nor did he certify that his brief complied with one of the exceptions to this page limit. In a similar circumstance, the supreme court stated:

> This is a novel, but nonetheless unacceptable attempt to expand the page limitation for appellate briefs set out in Rule 132.01, subd. 3 (1992) of our Rules of Civil Appellate Procedure. To be absolutely clear, *if these issues were important enough to have been reviewed, they should have been set forth with specificity within the ample page limit our rules permit.* As it is, having these issues before the court in the manner in which they were raised has not been at all helpful in reviewing [the appellant's] petition.

*Indep. Sch. Dist. No. 622 v. Keene Corp.*, 511 N.W.2d 728, 733-34 (Minn. 1994) (emphasis added), *overruled on other grounds by Jensen v. Walsh*, 623 N.W.2d 247 (Minn. 2001). Because Flowers did not brief his probable-cause argument on appeal, it is

4

waived. *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997) (stating that issues not briefed on appeal are waived), *review denied* (Minn. Aug. 5, 1997).

Even considering this issue in the interest of justice, we find no merit in Flowers's contention that the stop and search of the vehicle was unreasonable because the police lacked probable cause. The district court determined that the stop was justified under the *Terry* warrant exception, which requires only a showing of reasonable suspicion, a less-demanding threshold than probable cause. *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1879-80 (1968); *see State v. Flowers*, 734 N.W.2d 239, 351 (Minn. 2007) (stating that *Terry* applies to investigative vehicle stops and allows a limited search of a vehicle for weapons based on reasonable suspicion that the person stopped is engaged in criminal activity and may gain control of a weapon). Therefore, we conclude that the issue of probable cause is irrelevant.

## II. Gun history

Flowers contends that, because he has a constitutional right to present a defense, the district court erred by not allowing him to present the gun's history. We disagree.

Evidentiary rulings rest within the sound discretion of the district court and will not be overturned absent a clear abuse of discretion, "even when constitutional rights are implicated." *State v. Pendleton*, 706 N.W.2d 500, 510 (Minn. 2005). The district court "must allow defendants to present evidence that is material and favorable to their theory of the case," as long as it is relevant and its probative value outweighs any prejudicial effect. *State v. Crims*, 540 N.W.2d 860, 866 (Minn. App. 1995), *review denied* (Minn.

Jan. 23, 1996). The appealing party has the burden to establish an abuse of discretion by the district court and prejudice resulting from the error. *Pendleton*, 706 N.W.2d at 510.

At trial, Flowers sought to admit the testimony of (1) a ballistics expert who would testify that the gun was used in two prior shooting incidents; (2) a police officer who would link the gun to a shooting in south Minneapolis in September 2010 and testify to the suspect's physical description, which did not match Flowers's; and (3) a witness to that incident who would also describe the suspect. The district court refused admission of this testimony, determining that "[t]he fact that [the gun] apparently was fired at some point 8 months prior" is not relevant and "the fact that the gun was used in a prior incident, perhaps a crime," is prejudicial.

Flowers contends that this evidence is relevant to "the theory of defense . . . that [C.P.] plausibly could have bought, without a permit, a gun floating around on the streets that had no connection to [Flowers] and was never obtained or used by him." But to prove that Flowers was a prohibited person in possession of a firearm, the state only had to prove that Flowers knowingly possessed the gun on the date that he was stopped. *See* 10A *Minnesota Practice*, CRIMJIG 32.17 (2013) (listing the elements of felon in possession of a firearm). Whether C.P. owned the gun, though not dispositive, is relevant to Flowers's knowledge of the gun. But the gun's involvement in a crime several months earlier, before C.P. purchased it, does not have any tendency to make the existence of Flowers's knowledge of possession or C.P.'s purchase of the gun on the street more or less probable than it would be without the testimony. *See* Minn. R. Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Flowers also argues that any prejudice created by this evidence would have been to the state, making it unfair for the court to impede his constitutional right to present a defense. But even if the gun's history had some probative value, the undue prejudice and confusion to the jury caused by admitting evidence of potential criminal activity, which was unrelated to the issues at trial, outweighed any probative value. Moreover, the district court allowed C.P.'s testimony about how, where, and why she bought the gun on the street, which directly related to Flowers's defense. The district court did not abuse its discretion by excluding evidence about the gun's history prior to C.P.'s purchase.

### III.    Impeachment evidence

Flowers argues that the district court erred by ruling that his prior conviction could be used as impeachment evidence if he chose to testify, contending that it undermined his right to stipulate that he was a person prohibited from possessing a firearm. Flowers also asserts that the district court's reference to *State v. Hill*, 801 N.W.2d 646 (Minn. 2011), to explain its decision to limit impeachment by reference to an unspecified felony conviction, improperly negates the *Jones* analysis. *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978) (listing five factors that the district court must consider in determining whether to admit impeachment evidence against a defendant). We disagree.

The district court's ruling on the impeachment of a witness by prior conviction is reviewed, as are other evidentiary rulings, under a clear-abuse-of-discretion standard. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998). Evidence that a defendant has been

7

convicted of a felony is admissible for impeachment if the district court "determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). In making this determination, the court considers the *Jones* factors:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006) (quoting *Jones*, 271 N.W.2d at 538). "If a court finds that the prejudicial effect of disclosing the nature of a felony conviction outweighs its probative value, then it may still allow a party to impeach a witness with an unspecified felony conviction if the use of the unspecified conviction satisfies the balancing test of Rule 609(a)(1)." *Hill*, 801 N.W.2d at 652-53.

Flowers contends that the court's analysis of the *Jones* factors "was nothing short of boilerplate reasoning." But the record shows that the district court gave adequate consideration to each factor. In deciding whether to allow Flowers's prior conviction to be used as impeachment evidence, the district court determined that (1) admitting evidence of Flowers's prior conviction would allow "the jury to see the whole person of the defendant and better evaluate his or her truthfulness," *Swanson*, 707 N.W.2d at 655 (quotation omitted); (2) the prior conviction was remote and Flowers did not have much subsequent criminal history, weighing against admissibility; (3) the charged crime of being a prohibited person in possession of a firearm was very different from the prior conviction for aiding and abetting a homicide; (4) because Flowers had other witnesses to

8

tell his story, his testimony was not as important; and (5) credibility was a key issue in this case.

Flowers maintains that the whole-person theory for evaluating impeachment value should be rejected by this court, but this is an accepted analysis on just one factor to be considered by the district court and does weigh in favor of admissibility. *Swanson*, 707 N.W.2d at 655. Additionally, the fact that Flowers's prior conviction was remote is not dispositive because he was released from prison in 2004, so it fell within the 10-year window of admissibility. *See* Minn. R. Evid. 609 ("Evidence of a conviction . . . is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction . . . ."). And because Flowers intended to introduce his defense-theory evidence through C.P., Flowers's testimony was not of central importance since he expressed that he would just corroborate C.P.'s testimony. Finally, credibility was key, as Flowers concedes, because he was the only person in the car when police recovered the gun and knowledge of the gun was central to the charged crime. *See State v. Smith*, 669 N.W.2d 19, 29 (Minn. 2003) (citing *Ihnot*, 575 N.W.2d at 587) (stating that the fourth and fifth factors of the *Jones* analysis are satisfied if the defendant's credibility is a central issue in the case), *overruled by State v. Leake*, 699 N.W.2d 312 (Minn. 2005); *State v. Gassler*, 505 N.W.2d 62, 67 (Minn. 1993) (stating that the importance-of-defendant's-testimony factor supports exclusion of impeachment evidence if, by admitting it, a defendant's account of the events would not be heard by the jury).

Flowers also contends that, because his prior conviction and the present charge involve guns, admitting the prior conviction would lead the jury to believe that he is a person who is around guns. This argument has no merit because the state was not allowed to impeach with the substance of the prior crime. *See State v. Pendleton*, 725 N.W.2d 717, 728-29 (Minn. 2007) ("The concern weighing against admission with this factor is that the jury will use the convictions as substantive evidence, in addition to impeachment evidence."). The district court used the nature of Flowers's prior conviction to determine that it had probative value under *Jones* and weighed this against its assessment that "[t]he title of the prior conviction is . . . highly prejudicial to the defendant" in deciding that the state could impeach with an unspecified felony conviction only. This follows the ruling in *Hill*, where the supreme court determined that the district court did not abuse its discretion by allowing an unspecified felony conviction to be used for impeachment purposes after "[w]eighing all of the [*Jones*] factors [and] conclud [ing] that the probative impeachment value of a sanitized version of Hill's felony conviction outweighed its prejudicial effect." 801 N.W.2d at 653. Likewise, the district court did not abuse its discretion by allowing Flowers to be impeached with his prior conviction based on the court's determination that the probative value of the prior conviction outweighed the risk of prejudicial effect of admitting an unspecified felony conviction.

## IV. Juror misconduct

Flowers argues that the district court erred by denying his request for a *Schwartz* evidentiary hearing regarding juror misconduct, alleging that his constitutional right to a fair trial by an impartial jury had been violated. We disagree.

10

This court reviews the denial of a *Schwartz* hearing for an abuse of discretion. *State v. Church*, 577 N.W.2d 715, 721 (Minn. 1998). The purpose of a *Schwartz* hearing is "to avoid harassment of jurors and to provide a record on appeal in cases where, after the jury renders the verdict, the losing party becomes aware of facts which indicate the possibility of jury misconduct." *State v. Larson*, 281 N.W.2d 481, 484 (Minn. 1979) (quotation omitted). The requesting defendant must establish a prima facie case of juror misconduct by submitting "sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *Id.*

Flowers only cites the jury foreperson's letter as evidence of potential juror misconduct. In his letter, the foreperson expressed concern that after a series of split votes and at the end of the day on a Friday, the sole remaining not-guilty-voting juror acquiesced to the other jurors, even though he stated that he did not believe there was enough proof to establish that Flowers knew the gun was in the vehicle. This is not sufficient evidence to establish a prima facie case of juror misconduct. "Evidence of what happened in the jury room is inadmissible, except that evidence of improper extraneous prejudicial information, outside influence, or threats of violence or violent acts is admissible. Evidence of psychological intimidation, coercion, and persuasion is not admissible." *State v. Jackson*, 615 N.W.2d 391, 396 (Minn. App. 2000) (citing Minn. R. Evid. 606(b) and cmt. (emphasis omitted)), *review denied* (Minn. Oct. 17, 2000). We expect that jurors commonly feel pressure at some point during deliberations, which may have been the situation in this case, but there is no evidence of extraneous prejudicial information, outside influence, or threats of violence here. Because the only evidence

11

presented to the district court does not establish juror misconduct, it did not abuse its discretion by denying Flowers a *Schwartz* hearing.

## V. Prosecutorial misconduct

Flowers argues that the prosecutor committed misconduct, denying him a fair trial, by (1) failing to prepare witnesses; (2) failing to prepare for the case; (3) vouching for witnesses; (4) inflaming the jury's passions; and (5) misstating the burden of proof.

"We review prosecutorial misconduct to determine whether the conduct, in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Milton*, 821 N.W.2d 789, 802 (Minn. 2012) (quotation omitted). When comments made in closing argument are challenged, this court will evaluate the closing argument as a whole. *Swanson*, 707 N.W.2d at 656.

For objected-to prosecutorial-misconduct claims, this court applies one of two harmless-error standards. *State v. Watson*, 829 N.W.2d 626, 630 (Minn. App. 2013) (citing *State v. Caron*, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974)), *review denied* (Minn. June 26, 2013). In cases involving less-serious prosecutorial misconduct, this court considers "whether the misconduct likely played a substantial part in influencing the jury to convict." *Caron*, 300 Minn. at 128, 218 N.W.2d at 200. In cases involving "unusually serious" misconduct, this court asks if it is certain beyond a reasonable doubt that the misconduct was harmless. *Id.* For unobjected-to prosecutorial misconduct, we have discretion to review for plain error. Minn. R. Crim. P. 31.02; *State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). To establish plain error, the appellant must demonstrate that the prosecutor's unobjected-to act constitutes error and the error

12

was plain. *Ramey*, 721 N.W.2d at 302. "Usually [plain error] is shown if the error contravenes case law, a rule, or a standard of conduct." *Id.* If the appellant establishes plain error, the burden then shifts to the state to demonstrate lack of prejudice on the defendant's substantial rights from the error. *State v. Martin*, 773 N.W.2d 89, 104 (Minn. 2009). This burden is met if the state can show that there is no reasonable likelihood that the misconduct had an effect on the jury's verdict. *Ramey*, 721 N.W.2d at 302.

### A. Failing to prepare

"The state has a duty to prepare its witnesses, prior to testifying, to avoid inadmissible or prejudicial statements." *State v. McNeil*, 658 N.W.2d 228, 232 (Minn. App. 2003). And a prosecutor may not intentionally elicit inadmissible testimony from the state's witnesses. *State v. Haglund*, 267 N.W.2d 503, 506 (Minn. 1978). But "unintended responses under unplanned circumstances ordinarily do not require a new trial." *State v. Hagen*, 361 N.W.2d 407, 413 (Minn. App. 1985), *review denied* (Minn. Apr. 18, 1985).

Flowers contends that the prosecutor committed misconduct by failing to instruct to an officer, who almost testified about the confidential informant despite the district court's order that such evidence was inadmissible. But this was an unintentional response to the prosecutor's question and the defense interrupted with an objection before the officer said anything about the confidential informant or even used those words. The record shows that the prosecutor instructed the state's witnesses not to refer to the confidential informant, and the jury never heard any mention of the confidential informant at trial. As a result, there was no error.

13

Flowers also contends that the prosecutor committed misconduct by admitting magazines and ammunition into evidence without verifying the chain of custody. Flowers argues that these items were "effectively published" to the jury when the prosecutor asked two officers to identify the exhibits, and Flowers contends that the error was not harmless because the jury expressed interest in seeing the magazines during deliberations. We are unconvinced that there was any error here because these exhibits were not actually admitted into evidence or published to the jury, and there is nothing in the record suggesting that the prosecutor knowingly tried to admit inadmissible evidence.

But even if the prosecutor committed misconduct by failing to verify the chain of custody before trial, it was harmless. Photos of the magazines and ammunition were admitted into evidence without objection and defense witness, C.P., commented on the magazines several times in her testimony. Additionally, aside from asking witnesses to identify the magazines and ammunition for evidentiary purposes, the state did not comment on these items. *See Tucker v. State*, 309 Minn. 482, 487, 245 N.W.2d 199, 202 (1976) (holding that there was no reversible error where a shotgun was displayed in the courtroom because there was other evidence relating to the shotgun and "the prosecutor did not in any way call the weapon to the jury's attention or suggest anything about it.").

## B.      Vouching for witnesses

"A prosecutor may not personally endorse the credibility of a witness or impliedly guarantee a witness's truthfulness." *State v. Jackson*, 714 N.W.2d 681, 696 (Minn. 2006). But, during closing arguments, a prosecutor may properly present arguments about why particular witnesses should be perceived as credible or incredible so long as he

14

does not "impl[y] a guarantee of a witness's truthfulness, refer[] to facts outside the record, or express[] a personal opinion as to a witness's credibility." *State v. Patterson*, 577 N.W.2d 494, 497 (Minn. 1998) (quotation omitted).

Flowers argues that the prosecutor committed misconduct in his closing argument by vouching for the honesty of the police officers who testified by contending that the officers had no motive to fabricate their testimony and by stating, "[t]hey were not polished witnesses. And they were not polished witnesses despite some of my efforts pretrial to polish them up a bit. . . . And I submit to you that in their simplicity, you find their honesty." Flowers did not object at trial.

The prosecutor's statements did not constitute impermissible vouching because he merely argued that the officers were credible, not that he or the state believes they were credible. *See Swanson*, 707 N.W.2d at 656 (holding that a prosecutor's statement that a person had made a "[v]ery believable witness" was permissible, while the prosecutor's statement that the "state believes [that a second witness] is very believable" was impermissible). Though the use of "I" statements typically indicates the prosecutor's personal opinion, *State v. Leutschaft*, 759 N.W.2d 414, 425 (Minn. App. 2009), *review denied* (Minn. Mar 17, 2009), and the prosecutor in this case briefly went outside of the record by stating that he tried to polish up the officers' testimony, these statements were not an endorsement of the officers' credibility, relating instead to the prosecutor's general argument as to why the jury should perceive these witnesses as credible. Though the prosecutor was walking a fine line, Flowers has not met his burden of demonstrating that

the prosecutor committed an error in violation of a law, rule, or standard of conduct, and therefore, Flowers did not establish plain error.

### C. Inflaming passions of jury

A "prosecutor must avoid inflaming the jury's passions and prejudices against the defendant." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995). "The state should refrain from . . . making arguments that would divert the jury from its duty to decide a case on the evidence by injecting issues broader than a defendant's guilt or innocence into the trial." *State v. Dobbins*, 725 N.W.2d 492, 512 (Minn. 2006) (citation omitted). "It is well-settled that the state has a right to vigorously argue its case, but the state may not denigrate a particular type of defense." *State v. MacLennan*, 702 N.W.2d 219, 236 (Minn. 2005) (citations omitted). "A prosecutor's closing argument should be based on the evidence presented at trial and inferences reasonably drawn from that evidence." *State v. DeWald*, 463 N.W.2d 741, 744 (Minn. 1990).

In his closing argument, after discussing a line of questioning posed by defense counsel to one of the police officers about whether the gun was deliberately not tested for DNA and fingerprints, the prosecutor urged the jury to reject any argument from the defense that tried to "shake [their] faith in the police and their system of investigation and evidence gathering," and commented on a statement made by a juror during jury selection that he has faith in the judicial system. Flowers did not object at the time, but on appeal argues that this inflamed the passions of the jury by harnessing a theme about belief in the justice system and "accus[ing] the defense of fabricating a police conspiracy to lie." We disagree because Flowers cannot satisfy the burden of establishing plain error.

16

While the prosecutor's statements started by addressing a broader idea of the integrity of the justice system, the prosecutor did not implore the jury to convict Flowers based on their belief in the justice system, but pointed out that the evidence was sufficient for conviction and the police had no motive to fabricate testimony, even though there were mistakes in this case. *Porter*, 526 N.W.2d at 364 (stating that the state's arguments must be based on evidence produced at trial, or reasonable inferences from that evidence, but need not be "colorless"); *see State v. Graham*, 764 N.W.2d 340, 356-57 (Minn. 2009) (rejecting argument that the prosecutor engaged in misconduct by asking for justice for the victims, concluding that the state asked the jury to seek justice based on the evidence and not to inflame passions). In stating that defense counsel would try to shake the jury's faith in the justice system, the prosecutor permissibly addressed the merits of Flowers's defense, urging the jury to base its verdict on the evidence presented by the state and not the inferences put forward by Flowers. *See State v. McDaniel*, 777 N.W.2d 739, 752 (Minn. 2010) (stating that arguing that a particular defense has no merit is permissible). Flowers has not shown error.

### D.      Burden of proof

"Misstatements of the burden of proof are highly improper and would, if demonstrated, constitute prosecutorial misconduct." *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000). Flowers contends that the prosecutor made unobjected-to misstatements about the standard for proof beyond a reasonable doubt in his closing argument when he stated:

17

> In your lives when you're facing such decisions, do you have doubts along the way? Certainly. And are your doubts reasonable? Certainly. But ultimately you've been able to make decisions to buy a house, to have children, to move, to have surgery, despite the reasonable doubts you had about your decisions. You've been able to make decisions despite not having certainty beyond all doubt.

And when he stated, "you'll find that when you deliberate on this case, you will not go beyond your reasonable doubts about it." But in addition to these comments, the prosecutor correctly told the jury that beyond a reasonable doubt is the state's burden of proof and articulated the difference between "beyond all doubt" and "beyond a reasonable doubt." And the prosecutor explained that in applying the latter standard, the jury can reach a guilty verdict without forensic evidence because certainty beyond all doubt is not necessary. Moreover, these comments were preceded by the prosecutor's statement that the standard is "beyond a reasonable doubt[,] [n]ot beyond all doubt." While the prosecutor's closing argument contained some inartful statements about the burden of proof, overall, his extensive discussion on the issue was not a misstatement of the law. *See State v. Taylor*, 650 N.W.2d 190, 208 (Minn. 2002) (stating that "[a] reviewing court considers the closing argument as a whole and does not focus on selective phrases" taken out of context).

Even if the prosecutor did misstate the law, the jury was properly and repeatedly instructed on the state's burden of proof by the district court. *See State v. Trimble*, 371 N.W.2d 921, 926-27 (Minn. App. 1985) (concluding that error in misstatement of presumption of innocence was harmless where jury received proper instructions), *review denied* (Minn. Oct. 11, 1985). The district court also instructed the jury to disregard any

18

statement of law by an attorney that differed from that made by the court.  *See State v. Shoen*, 578 N.W.2d 708, 718 (Minn. 1998) (reviewing court will presume that jurors follow the district court's instructions).  When the instructions are read as a whole and the statements are taken in context, it is unlikely that any misstatements of law by the prosecutor affected the jury's verdict.

**Affirmed.**