*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1457**

James William Graham, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 21, 2016
Affirmed
Jesson, Judge**

Stearns County District Court
File No. 73-CR-12-7497

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

In this appeal from denial of postconviction relief, appellant argues that the evidence was insufficient to convict him of second-degree controlled-substance crime

because the only evidence of his participation in a controlled buy was the uncorroborated testimony of the paid informant. Because, under Minnesota law, the testimony of an informant who is not an accomplice need not be corroborated, and because the record is sufficient to establish appellant's guilt beyond a reasonable doubt, we affirm.

## FACTS

In January 2012, a paid confidential informant, C.W., participated in a controlled buy of methamphetamine arranged by St. Cloud police. C.W. had a prior felony conviction for wrongfully obtaining public assistance and, at the time of the controlled buy, was a user of methamphetamine. Police considered her a reliable informant.

In a phone call recorded by police, C.W. called a contact and arranged to meet at an apartment building in Sartell to purchase one gram of methamphetamine for $110. The investigator followed standard controlled-buy procedures, including supplying C.W. with photocopied currency. He requested surveillance, hooked up a video device in an unmarked law-enforcement car, provided C.W. with an audio recording device, and followed her to the buy location.

The investigator testified that on the way, C.W. called to tell him that she had learned that another person, appellant James William Graham, would also be in the building. C.W. tried to get someone to come outside to make the deal, but she was unsuccessful, and someone directed her inside, where she met Graham. The investigator saw her enter the apartment building, and another officer saw her leave the building. The investigator then met her at a different location, where she surrendered methamphetamine.

The state charged Graham with second-degree controlled-substance crime. At Graham's jury trial, C.W. identified him in court as the person who sold her drugs that day. She testified that when she arrived at the buy location, Graham, whom she knew slightly, was there with two other people. She testified that Graham had given her directions to the apartment and she met him outside the building in the back. They went inside, she put the money on a bed, he handed her a bag containing methamphetamine, and she left. After the sale, C.W. identified Graham in a photo lineup and told police that she was "100% sure" that he was the person who sold her drugs.

C.W. also testified that a photo exhibit appeared to show the cash she was given. She testified that she did not look at the serial numbers on the cash, but she had no reason to believe it was not the money that she was given. She also identified the plastic bag containing drugs, which she gave to the investigator after the controlled buy, although she could not be completely sure that it was the same plastic bag. She further identified Graham's voice on an audio recording of the buy, which was played for the jury.

Graham presented no witnesses and elected not to testify. The jury found him guilty, and the district court imposed a presumptive 75-month sentence. In May 2015, Graham filed a petition for postconviction relief, arguing that C.W.'s uncorroborated testimony was insufficient to establish proof beyond a reasonable doubt that he participated in the controlled buy. The district court issued an order denying the petition without an evidentiary hearing, finding that direct evidence of the informant's testimony and circumstantial evidence of the police procedures used in the controlled buy, along

3

with evidence of the audio from the buy heard by the jury, was sufficient to convict Graham. This appeal follows.

## D E C I S I O N

Graham argues that the postconviction court abused its discretion by denying his petition for relief because the evidence is insufficient to support his conviction. This court reviews a postconviction court's decision on issues of law de novo, but reviews its factual findings for clear error and to determine whether sufficient evidence exists to support those findings. *Pippitt v. State*, 737 N.W.2d 221, 226 (Minn. 2007). We will not reverse the postconviction court's decision absent an abuse of discretion. *Id.* "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted). Graham has the burden of showing that he is entitled to relief. *Pippitt*, 737 N.W.2d at 226.

When considering an insufficient-evidence claim, a reviewing court undertakes "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

4

Graham argues that the only evidence identifying him as a participant in the drug transaction was the uncorroborated testimony of C.W., who, he argues, is inherently unreliable because she was a paid informant. But the jury may choose to believe the testimony of witnesses who receive legal and economic compensation for their cooperation. *See State v. Triplett*, 435 N.W.2d 38, 44-45 (Minn. 1989) (holding that the jury could have relied on the testimony of a witness although the witness used drugs, lied to police, and forged checks). And Minnesota law does not require corroboration of a police informant's testimony unless the informant is also an accomplice. *State v. Hadgu*, 681 N.W.2d 30, 34 (Minn. App. 2004), *review denied* (Minn. Sept. 21, 2004). Although a defendant may not be convicted solely on the uncorroborated testimony of an accomplice, Minn. Stat. § 634.04 (2010), a person who receives illegal drugs cannot be an accomplice of a person charged with selling the drugs because those offenses are separate and distinct. *State v. Swyningan*, 304 Minn. 552, 555-56, 229 N.W.2d 29, 32 (1975). Because C.W. only received the methamphetamine and did not aid in distributing it, she was not an accomplice to Graham's offense, and corroboration of her testimony is not required. *See Hadgu*, 681 N.W.2d at 34.

In an individual case, even if corroboration is not required by statute, the absence of corroboration may call for a holding that the evidence is insufficient to support a conviction. *State v. Ani*, 257 N.W.2d 699, 700 (Minn. 1977). Graham argues that the state's additional evidence did not corroborate C.W.'s identification of him as the person who sold her the drugs. He maintains that evidence of police procedures goes only to

5

whether a drug deal occurred, not the seller's identity, and that the jury could not have identified Graham's voice on the audiotape because he did not testify at trial.

We agree that this evidence does not necessarily corroborate Graham's participation in the controlled buy. But a conviction may rest on the uncorroborated testimony of a single credible witness. *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004). C.W., who was acquainted with Graham before the controlled buy, testified that, when she viewed a photo lineup, she was "100% sure" that he was the person who sold her drugs. A police officer confirmed that C.W. positively identified Graham from the photo lineup. C.W. also identified Graham in court as the person who sold her methamphetamine.

Graham argues that C.W.'s testimony was "significantly undermined" when she admitted on cross-examination that she did not recognize the bills that were used in the controlled buy and could not independently identify the plastic bag containing the methamphetamine. But it is not unreasonable that she would not have noted the serial numbers on the bills or the exact dimensions of the bag, given that the police found no money on her person in a post-buy search, and she testified that she gave the bag to police immediately after the buy.

Graham also points out that, although C.W. testified that he "met [her] outside in the back" of the building, police surveillance did not show that anyone had exited the residence before her or entered the building with her. But "[a] jury, as the sole judge of credibility, is free to accept part and reject part of a witness' testimony." *State v. Poganski*, 257 N.W.2d 578, 581 (Minn. 1977). The jury was free to reject the portion of

6

C.W.'s testimony about Graham meeting her outside and still credit her testimony that he was present when the drugs and money changed hands.

"The weight and credibility of individual witnesses is for the jury to determine," and an appellate court cannot retry the facts. *State v. Bliss*, 457 N.W.2d 385, 390-91 (Minn. 1990). After a careful review of the record, we conclude that the evidence is sufficient to sustain the postconviction court's decision to deny Graham's petition.

**Affirmed.**